## Courier-Journal Job Printing Company v. Haag.

(Decided October 14, 1913).

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Master and Servant—Safe Place to Work—Application of Rule as to.—It is the duty of the master to exercise ordinary care to furnish to the servant a reasonably safe place to work, but this rule only applies to the place where the servant is directed by the master to work, and when the servant voluntarily leaves the place of work assigned by the master, and without his knowledge or consent takes up work at another place, and with other appliances, the servant gets beyond the limit of duties imposed by law upon the master.

2. Master and Servant—Acts Done Suddenly or Through Fright.—In order to relieve a person from the consequences of his own acts on the ground that they were done suddenly or through fright, they must be done under a sense of impending danger, and that danger must be a real one, or the circumstances such as to create in the mind a reasonable apprehension of danger.

3. Master and Servant—Negligence—Evidence.—In an action by a Servant against the master for damages, evidence examined and held that no negligent act of the master has been proven to warrant a recovery against it for the injury sustained, and it was error to submit the case to the jury.

O'NEAL & O'NEAL for appellants.

J. W. S. CLEMENTS for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

The appellee sued the appellant for the loss of a finger, and recovered $800. The grounds of recovery were that appellant negligently failed to furnish her, an employee, a safe place, and a safe machine with which to work. The appellant conducts a job printing establishment, employing numerous servants, and using the usual binding, folding, printing and perforating machinery in its business. Appellee had been in its employment for more than two years, and, as she swears, had used all of these different machines in that time. It seems that there were two dieing machines used for turning out different sizes of work. These machines were adjacent; one spoken of as the South machine, and the other as the North machine. The North machine, where appellee was injured, was near a door that opened into this, from

another room, and was so situated that when the door opened wide it would strike the North machine. On the day of the accident she was put to work on what is known as the South machine, which was farthest from the door. Just prior to the accident, and in the foreman's absence, Nellie McMahon, a co-laborer of appellee, requested appellee to cut for her some card-board, and the appellee left the work she had been set to do by the foreman, and started to cut this card-board on the North machine next to the door. The proof shows that she was familiar with both of these pieces of machinery and had worked with them frequently. It is also shown, and appellee knew, that this North machine had to be set for each job, and had not been set for the job or piece of work which the appellee had started to do for the accommodation of Miss McMahon.

The only testimony in this case is that of the appellee, and another co-laborer, Fred Wahle. The testimony of Wahle is merely corroborative of the appellee. At the conclusion of the evidence of these two witnesses, appellee rested her case, and appellant demurred to the evidence, and asked for a peremptory instruction in its favor. This the court refused to grant, and appellant declining to introduce any witnesses, the case was submitted to the jury and they returned a verdict for appellee in the amount stated.

Appellant claims there was no evidence to justify the submission of this case to the jury, and to determine this question, we copy the following from appellee's testimony, in chief:

"Well, I worked at the dieing machine for about three or four days on a job which contained four or five different sizes and shapes of labels, and I was working at the North machine for a couple of days on two sizes, two shapes of the same dies, but of different sizes, and I had finished that and went to the South machine .................... on the job for the same people, but different shape, and as I was working on them Miss Nellie had been wrapping this size from the other machine, and she needed some card-boards, which were either soiled or missing, and she asked me to get them for her. Well, I knew the jobs needed card-boards to them, and, as they had no others I went to the other machine to die them out for her, and as I did—the machine sometimes works itself down; that is, the plate of the machine by running

so long, so many days, sometimes works itself down, which it had done at that time. Q. State to the jury what you mean by working itself down? A. It loosens, the bolts that you set the machine or screw, and it sometimes will work itself down and perhaps a thread or so, which it had done at that time, but, of course I didn't know it because I died out the same job on the machine just before, and as I put a die on there to die out these card-boards it stuck slightly in the wood, but very little, and as I put my hands under the plate of the machine to loosen this up some one passed through the door, slammed the door open, which caused the door to extend about straight, not being able to open very far, and hit against the machine frightening me, and as I did I unconsciously got my finger on top of the die and as the plate came down and crushed my finger.''

And the following from her evidence on cross-examination:

''Q. How long had you worked for the company. A. Two years and four months.

''Q. During that time you operated these machines off and on all the time. A. Yes.

''Q. You understood how to operate and manage them? A. Yes.

''Q. And before this accident, please turn around here just a moment, this large thing is supposed to be the door. You were working on the South machine before this happened, were you not. A. Yes.

''Q. That is where Mr. Murray, the foreman put you to work, that was your job, wasn't it? Yes, at that time.

''Q. Foreman Murray was the foreman of the entire room, was he not, A. Yes.

''Q. No other foreman. A. No, sir.
*    *    *    *    *    *    *    *    *    *

''Q. She (Nellie McMahon) was not your foreman in any way, had no right to give you order any way? A. No, sir.

''She asked you to give her some square card-boards, didn't she? A. Not square card-board, they were long ones.

''Q. Some long card-board, did she? A. Yes.

''Q. Mr. Murray was absent in another part of the building at that time? A. Yes.

''Q. And on her request you went over there and undertook to work this North machine? A. Yes.

"Q. Murray hadn't ordered you to go over there and cut these card-boards, is that right? A. Yes.

"Q. Simply on request of Miss McMahon you went over there a few minutes before the accident and started to work on that machine? A. Yes.

\* \* \* \* \* \* \* \* \*

"During all the two years you had worked there and worked on these machines this North machine was located right there at the same place it was located at the time of this accident? A. Yes.

"Q. You knew that the door when it was opened would come back and strike the machine if it was opened far enough? A. Yes.

\* \* \* \* \* \* \* \* \*

"Q. You knew the door was liable to be opened and slammed at any time while you were at work on the machine, didn't you? A. Very likely to.

"Q. In the same condition at the time of this accident it was then? A. Yes.

"Q. And had been during all the time you worked on it? A. Yes.

"Q. That machine works up and down, don't it? A. Yes.

"Q. About like that (indicating)? A. Yes.

"Q. Slowly? A. Yes.

"Q. About five or six inches? A. It depends upon the height of the die.

"Q. No one is allowed to set this machine except Mr. Murray? A. Not the North machine.

"Q. And when the power is on in the room on the machines that machine just constantly goes up and down that way? A. Yes.

"Q. At the time you went over there and undertook to do this thing at the request of Miss McMahon you knew that machine was going up and down and could see it going up and down? A. Yes.

"Q. You knew if you caught your hand in between the plate and the die it would be hurt, didn't you? A. Yes.

"Q. Anybody could see it? A. Yes.

"Q. You were working on the South machine before this happened, were you not? A. Yes, sir.

"Q. That is where Mr. Murray, the foreman, put you to work, that was your job? A. Yes, at that time.

"Q. Foreman Murray was foreman of the entire room, was he not? A. Yes, sir.

"Q. No other foreman? . A. No, sir."

The effect of this evidence is. that she was put to work on one machine by the foreman, and while so working another servant, not her superior, asked her for some card-board. She went to the other machine next to the door and undertook to cut it as an accommodation for the other servant, but without knowledge or consent of the foreman, and in his absence. At this point some one opened the door suddenly, causing her a nervous fright, and she unconsciously or involuntarily placed, her hand under the machine as it came down, and mashed her finger.

It is nowhere contended that the impact of the door affected the stability of the machine, or in any way made the machine dangerous, or her situation perilous. She admits that she knew the machine was located next to the door, and the door if opened wide would come back against it, and that the door was there for the purpose of ingress and egress from one room to the other, and was constantly so used by appellant's servants. It is an elementary rule that it is the duty of the master to exercise ordinary care to furnish to the servant a reasonably safe place to work and reasonably safe appliances with which to work, but this rule only applies to the place where the servant is directed by the master to work, and to the appliances with which the servant is directed to work, and when the servant voluntarily leaves the place of work assigned by the master, and without his knowledge or consent takes up work at another place, and with other appliances, the servant gets beyond the limit of duties imposed by law upon the master. Moreover, there is no proof that the North machine she was using, or the place where it was situated was inherently dangerous. It is true it needed to be re-adjusted to do the kind of work appellee purposed doing with it, but she knew that it needed this re-adjusting, and that. no one but Mr. Murray, ever did . this.

She alleges, and in substance swears, that some one slammed or pushed the door open against the machine, and that this frightened her, and caused her to "jump or move involuntarily, and momentarily distracted her attention; but that owing to said sudden fright caused by the striking of the machine, as. aforesaid, by the door, etc., *  *  * her right hand was caught between

the plunger and the die, and so crushed and mangled, &c.''

It is urged that appellee is entitled to recover for this injury which is admitted to have been the direct result of her sudden fright. It is a well settled rule of law that exempts a person injured from the charge of contributory negligence because of an act done in an emergency, when the emergency is brought about by the negligent act of the master. In order to relieve a person from the consequences of his own acts on the ground that they were done suddenly, or through fright, they must be done under a sense of impending danger, and that danger must be a real one, or the circumstances such as to create in his mind a reasonable apprehension of danger. The authorities hold that the injured person must be placed in such a position that he has to choose on the instant in the face of the impending peril. In such a case he will not be held guilty of contributory negligence even by doing an act which is dangerous, and from which injury results in attempting to escape danger. (29 Cyc., 521.)

In the case of the South Cov. & Cin. Street Ry. Co. v. Ware, 84 Ky., 267, in discussing this subject this court held:

''He has no right, upon the happening of some trivial occurrence, or such as would not create fear or apprehension of injury in the mind of an ordinarily prudent and careful person, to bring injury upon himself, and then recover damages by reason of it. (2 Rorer on Railroads, pp. 1092-3.)''

In the case at bar there was no danger impending, real or apparent, and no circumstances to create in her mind a reasonable apprehension of danger. The sudden noise, or movement of the door gave to the appellee, as she admits, a nervous shock, causing the involuntary placing of her hand in the machine. Neither the noise or the impact of the door against the machine was dangerous or unusual, nor the result of any negligence of the appellant. A flash of lightening, a clap of thunder, or a blast of the whistle, was just as likely to cause the injury, and no amount of care, prudence or caution on the part of the appellant could make the place, or the appliances safe to the appellee in view of her nervous temperament. It is perfectly clear from the testimony in this case that no negligent act of the appellant has been proven to warrant a recovery against it for the

injury which the appellee sustained, and we, therefore, are of the opinion that the court erred in submitting the case to the jury.

The judgment is, therefore, reversed and cause remanded for proceedings consistent with this opinion.