## Harris v. Lam Coal Company.

(Decided December 15, 1916.)

### Appeal from Muhlenberg Circuit Court.

1. Pleading—Fatal Variance Between Pleading and Proof.—Where a servant in his petition sought to recover damages for personal injuries sustained in his capacity of machine foreman while performing the duties of that place, and in his evidence said that he did not sustain the injuries while acting in his capacity of machine foreman, there was a fatal variance between the pleading and proof within the meaning of section 131 of the Civil Code.

2. Master and Servant—Volunteer.—Where a servant who was employed as machine foreman, was injured by going to a place in the mine where an explosion occurred, when his duties as machine foreman did not require him to go there, he was acting purely as a volunteer and the master was not liable.

3. Mines and Minerals—Mine Foreman—Assistant Mine Foreman.—It is provided in section 2726 of the Kentucky Statutes that assistants to the mine foreman may be employed by the operator or superintendent, but if the mine foreman should employ an assistant and this assistant, with the knowledge or acquiescence of the mine operator or superintendent, should act in this capacity, this knowledge of and acquiescence in what the mine foreman did and what his assistant was doing would constitute an approval of the appointment of the assistant by the mine foreman and put the assistant in the same attitude as if he had been employed by the operator or superintendent.

4. Master and Servant—Injury to Servant by Negligence of Person Acting for Foreman.—Where a foreman who has authority to do

so, puts another in charge in his place during his absence, such other person for the time being takes the place of the foreman, and the master will be liable to a servant who sustains injury by reason of the negligence of the person who was acting in the place of this regular foreman.

5. Mines and Minerals—Mine Foreman—Mine Owner Not Liable for Injury to.—The mine owner is not liable for an injury to the mine foreman that is not caused by negligence on its part.

ERNEST WOODWARD and MILTON CLARK for appellant.

BELCHER & BELCHER and TAYLOR, EAVES & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant Harris, while working as an employe of the appellee coal company, sustained severe personal injuries as the result of a shot fired by one of the miners in a room of the mine. To recover damages for the injuries so sustained, he brought this suit, and on the trial, after the evidence in his behalf had been heard, the court directed a verdict in favor of the coal company, and he appeals.

In his petition he averred "that on and prior to the 12th day of December, 1914, he was employed by and working for the defendant, Lam Coal Company, at and in its said coal mine near Bevier, Kentucky, in the capacity of a machine foreman, and while working as aforesaid in the line of his duty, and while using due care for his own safety on or about the said 12th day of December, 1914, through the gross negligence and carelessness of the defendant, its agents, servants and employes in charge of and operating said mine superior in authority to plaintiff, and also through the gross negligence and carelessness of defendant's servants and employes engaged in a different line of employment to that of plaintiff, his head, nose, teeth and jaw, eyes and shoulder, were seriously injured, bruised, lacerated and broken, because of a premature and untimely blast or shot which was exploded and discharged by John Henry Bolden, an employe of defendant, working in a different line of employment from that of the plaintiff. . . .

"Plaintiff says that defendant, its agent, servants and employes in charge of and operating said mine, superior in authority to the plaintiff, negligently and carelessly failed to furnish plaintiff a reasonably safe place in which to perform his work, and that said de-

fendant's servants and employes who were engaged in a different line of employment from that of plaintiff were grossly negligent and careless in the management and operation of said mine, and by discharging and exploding dangerous, deadly and powerful explosives therein without warning or notice to the plaintiff, at unusual, unexpected and unaccustomed times and in violation of the rules, regulations and custom governing the work in said mine.''

The answer was a traverse and plea of contributory negligence.

It appears from the evidence that under a rule in force in the mine shots were not to be fired until 3:30 p. m., or afterwards, and that Bolden, the man who fired the shot, was fully acquainted with this rule, but not having his watch on this day, and being of the opinion that the time for firing shots had about arrived, he asked a fellow miner by the name of Springer what time it was and Springer after looking at his watch, thought it was 3:30, when in fact it was only 2:30, and told Bolden it was 3:30. Upon receiving this information Bolden made arrangements to fire some shots in his room. When Harris, who was in the mine in another room, heard the first shot fired before the time for firing had arrived, he apprehended that some accident had happened and went immediately and as quickly as he could to the room where the shot was fired. About the time he entered the room another blast that had been prepared by Bolden exploded and threw with great force a lot of coal against the head and body of Harris, inflicting painful and serious injuries.

It will be observed that Harris in his petition averred that when the accident occurred he was employed by and working for the coal company ''in the capacity of a machine foreman, and while working as aforesaid in the line of his duty, and while using due care for his own safety'' received the injuries of which he complains. But in his testimony he said that in addition to being employed as foreman of the machine men and bradders—the latter having duties in connection with the machine men and loaders not necessary to detail—he was also given orders by the mine foreman, Mr. Arnold, to ''look after things for him. He told me to look after things for him, and if I found anything going wrong around me to look after it and report it to him.''

In relating what happened at the time of the accident, he said: "Well, I was setting on the second west lie-way; been there five or ten minutes, and I heard a shot go off and I pulled my watch out and it was twenty-five minutes after two; I says, 'I expect somebody is hurt tamping a shot, or set a keg of powder off,' and I was expecting to find somebody badly hurt or killed. Q. You did not know where the shot was fired? A. No, sir. Q. And you were seeking to find out where it was fired? A. Yes, sir. Q. Why were you seeking to find out? A. I thought there was somebody hurt, and I also had orders from the mine foreman to see after anything going wrong. Q. Now, what was it that was going wrong? A. Well, there was a shot fired out of time. Q. Was there an established time at which shots should be fired? A. Yes, sir, 3:30. Q. Had the foreman given you any specific instructions about the second west entry where you said you were hurt? A. Well, that was the entry he had me looking after, but I had looked after other entries for him, too. He just told me to look after the second west run for him and if I seen anything going wrong at any time to look after it and report to him."

On his cross-examination he was asked and answered these questions: "Q. What were your duties as machine boss? A. To look after the machine men and bradders, and keep the bradders' time. Q. Those were your duties as machine boss? A. Yes, sir. Q. For what period of time before the accident had you been looking after the mine for Mr. Arnold when he was not present for the purpose of reporting to him? A. Well, I had been looking after it off and on all the time that I had been there. Q. And you went down there to find out the purpose of firing out of time? A. Well, I thought there was somebody hurt by it going off that time of day. Q. You didn't go then for the purpose of finding out what the men were doing and seeing whether anything was wrong or not to report to Mr. Arnold, as you say? A. Why, certainly I would have reported it to Mr. Arnold; I was going according to his orders, because I thought there was something wrong. Q. And you went to see what was wrong? A. Yes. Q. And when you went you were going instead of Mr. Arnold, in his place, acting for him, for the purpose of reporting to him? A. Well, I was going to report to him, yes, sir. Q. Your duty as machine boss, the purpose for

which you were employed, you say, did not require that you go down to this place where you received this injury? A. My special orders did. Q. I am talking about as machine boss? A. My duties as machine boss didn't. Q. Did anybody direct you specially on that day to go down there? A. I don't know that they did specially that day; but I had orders, as I told you.''

It will thus be seen that according to the evidence for the plaintiff he was employed as machine boss to look after the machine men and bradders, and that the mine foreman, Arnold, had also instructed him to look after things in the mine when he, Arnold, was absent and report to him anything that he found going wrong.

It also appears from his evidence that in going to the place where he received the injury he was not acting in his capacity as machine foreman or looking after the machine men or bradders, because they had nothing to do with shooting or blasting coal. He went to the place of his injury acting under his general instructions from the mine foreman, because he believed something had gone wrong when he heard the shot fired out of time. So that, although he alleged in his petition that he received the injuries complained of while working in his capacity as machine foreman, it develops from his evidence that he did not receive his injuries while working in his capacity as machine foreman, or while doing anything at all in connection with his duties as machine foreman. His duties as machine foreman did not require him to give any attention to shots fired out of time, or to go to the place where noise from an explosion came from, or to investigate the cause of it.

Putting aside for the moment the directions given to him by the mine foreman, it is clear that Harris did not receive his injuries in the line of his employment as machine foreman or while he was engaged in any service that his employment as machine foreman required him to perform; and it follows that he could not recover damages for injuries sustained, at a time when and a place where his duties did not require him to be, and while acting purely as a volunteer.

Upon this condition of the pleadings and the evidence, it is insisted that there is a fatal variance between the cause of action set out in the petition and the cause of action attempted to be made in the evidence, and it would seem that there is not room for two opin-

ions about the correctness of this contention on the part of the coal company. Civil Code, section 131.

Counsel for Harris appreciating the force of this contention seek to avoid the obstacle presented by the fatal variance between the pleading and proof, by shifting the issue and putting the case upon the ground, as stated in the brief, "that appellant at the time he received his injuries was acting in the line of his duty under his employment in obeying the orders of the mine foreman. In going in search of the cause of the premature shot, appellant was obeying the orders of the mine foreman and had a right to believe that the mine foreman would not send him into a dangerous place to perform his work. He had a right to believe that the shooting in the mines was so regulated by the mine foreman, mine management, and under the rules and customs prevailing in the mine relating to the time of firing shots as to prevent irregular and untimely shots being purposely discharged at unaccustomed times, and therefore did not expect to find in the room he entered another loaded hole ready to explode."

But in assuming this position they are confronted by the further obstacle that if Harris was performing duties as assistant mine foreman, or acting for the mine foreman, Arnold, in his absence, there can be no recovery in his behalf, because he was the superior officer of the miner who, without meaning to violate any rule of the mine, but in good faith believing the time had arrived when shots should be fired, proceeded to do so, and therefore as Arnold, the mine foreman, could not have recovered if he had been injured under the same circumstances, neither can Harris.

To avoid this dilemma counsel say that Harris can not be regarded as a vice-principal or as representing the master in safeguarding the mine. "He acted merely in obedience to the positive terms of the statute in obeying the commands of the mine foreman, and as a dutiful servant, in trying to ascertain and report to that mine foreman, who was either wilfully or necessarily absent from that portion of the mine practically all of the time, the nature and cause of the unusual occurrence of a shot being fired an hour before time. This occurrence indicated an accident, with probably fatal results, or a negligent violation of the rules. . . . . It was, therefore, clearly the duty of the plaintiff under

his instructions to ascertain the facts and to report to the mine foreman.''

We are inclined to the opinion that Harris must be treated as acting in the capacity of assistant foreman, although under the statute regulating mines and mining he was not, strictly speaking, an assistant to the mine foreman. The mine foreman is the chief officer in charge of the mine, the statute in section 2726 providing that ''the mine foreman shall have charge of all the inside workings and of the persons employed therein, in order that all the provisions of this act so far as they relate to his duties shall be complied with.'' It is further provided in this same section that assistants to the mine foreman may be employed by the operator or superintendent. It thus appears that under the statute a mine foreman has not the authority to employ an assistant mine foreman, as this power is delegated by the statute to the operator or superintendent. But, notwithstanding the terms of the statute, if the mine foreman should employ an assistant, and this assistant, with the knowledge and acquiescence of the superintendent or operator, should act in that capacity, this knowledge of and acquiescence in what the mine foreman did and what his assistant was doing, would constitute an approval of the appointment of an assistant by the mine foreman and have the effect of putting the assistant in the same attitude as if he had been employed by the operator or mine superintendent. Under such circumstances if some person were injured by the negligence of the assistant, or while acting under his direction, we have no doubt that the coal company would be responsible for his acts to the same extent as if he had been, in fact, appointed assistant by the operator or superintendent: Gould Const. Co. v. Childers' Admr., 129 Ky., 536; Broadway Coal Mining Co. v. Davis, 122 S. W. 228.

But if it should be said that the evidence was not sufficient to show that Harris was acting as assistant with the knowledge and acquiescence of the operator or superintendent—although there is a good deal of evidence in the record that for quite a while he performed a number of duties devolving on the mine foreman—we are nevertheless of the opinion that there can be no recovery in his behalf because it is plain that if he was not acting as assistant mine foreman he was purely a volunteer and had no business at all to go to the place

where he went at the time and under the circumstances. He either went to the place where he received the injury as assistant mine foreman or he went as a volunteer. If he went as assistant mine foreman, then he occupied the same position in respect to this matter as the mine foreman would have occupied if he had been present and had gone to the place where Harris went to ascertain what the trouble was. And clearly the mine foreman could not have recovered, because there is no contention that the coal company was in any manner responsible for the accident. The explosion was not due to its negligence or its fault. It was, as we have said, caused by pure mistake made in good faith by the shooter. If he went as a volunteer neither can there be any recovery in his behalf because as a volunteer he had no business at the place where he went and no duties to perform there. So that whether he went as assistant foreman or as a volunteer the result is the same.

The judgment is affirmed.