## Chesapeake & Ohio Railway Company et al. v. Warnock's Administratrix et al.

(Decided January 14, 1930.)

BROWNING & REED for appellants.

DYSARD & MILLER and WAUGH & HOWERTON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing on appeal and affirming on cross-appeal.

On October 21, 1925, E. C. Warnock, with R. W. Bradford and Dee Wright, left Kehoe, in Carter county, driving in a Ford automobile to a place on Laurel creek, a distance of about seven miles from Kehoe, for the purpose of making a tap in the pipe line of the Cincinnati Gas Transportation Company. The automobile belonged to Wright, and he drove it. Warnock was a foreman for the Cincinnati Gas Transportation Company, in charge of that part of its pipe line extending from the Big Sandy river to Valley, in Lewis county, which included the point where the work was done on October 21.

Bradford and Wright were laborers in the employment of the same company, and worked under the supervision and direction of Warnock. After they had driven to Laurel creek and made the tap in the pipe line, they drove to Greenup, which town they left about noon. They attended to some small matters in that town, and Warnock obtained from the post office the pay checks, which were turned over to Wright and Bradford. They started home, and while passing over the Laurel street crossing, in Greenup, the automobile, at the time driven by Wright, was struck by an east-bound freight train of appellant. Warnock was instantly killed, and Bradford and Wright were injured.

Suit was instituted by appellee, administratrix of Warnock's estate, against appellant and the engineer and fireman on the train that struck the automobile. Appellants answered, alleging that Warnock was employed by the Cincinnati Gas Transportation Company, and that his employer had been required to pay an award in favor of the dependents of Warnock, made against it by the Workmen's Compensation Board, and that by reason thereof it was a proper and necessary party to the suit. It appeared and filed its answer and cross-petition, praying a recovery against appellants in the amount that it had been required to pay the dependents of Warnock.

At the July term, 1928, of the Greenup circuit court, a trial resulted in a verdict in favor of appellees for $23,800. On motion of appellants, the verdict was set aside and a new trial granted. The case was tried again in November, which resulted in a verdict of $20,000, on which judgment was rendered in favor of the administratrix for $15,909.61, and in favor of the Cincinnati Gas Transportation Company for the sum of $4,090.39. Appellants have prosecuted an appeal from the last judgment, and are seeking a reversal of it on several grounds. Appellees are appealing from the order of the court setting aside the verdict on the first trial and awarding a new trial.

It is conceded by the parties that Warnock, Bradford, and Wright were employed by the Cincinnati Gas Transportation Company at the time of the accident, and it is also conceded that at the time of the accident all three men were engaged in the performance of the duties of such employment, although there is some little con-

troversy as to whether the stipulation filed with the record meant to concede that they were engaged in the performance of their duties at the time of the accident, except in so far as the claim for compensation before the Workmen's Compensation Board was concerned.

The first argument advanced against the judgment below is that the trial court erred in refusing to instruct the jury that Warnock should be held responsible for the negligence, if any, of Wright, the driver of the automobile. The instructions as given told the jury that the negligence of Wright was not imputable to Warnock, and would not bar a recovery for his death, unless such negligence "was the sole and proximate cause" of the collision. Appellants offered an instruction as follows:

"The court instructs you that, in approaching and attempting to cross over the defendant's railway tracks, it was the duty of the driver of the car in which the decedent, Elmer Warnock, was riding, and also the duty of the decedent himself, to exercise ordinary care to learn of the approach of the train and to keep out of the way, and, if the crossing was more than ordinarily dangerous, then it was the duty of the driver of said car, and also of the decedent, to exercise increased care commensurate with such danger; and if the jury shall believe from the evidence that the driver of said car, or the decedent himself, or either of them failed to exercise such care, and that but for this the accident would not have occurred, then the law is for the defendants, and the jury will so find, even though they may also believe the defendants negligent under instruction No. ——."

The court gave the offered instruction on the first trial, but declined to give it on the second trial, and instead gave an instruction as above indicated on the question of contributory negligence. The evidence appears conclusive that Warnock, Wright, and Bradford were engaged in the performance of the duties of their employment at the time of the accident, and Wright's car was used by the three men at the time in connection with their work, although they had completed the particular job which they started out to do before the accident. On their return to their homes, they went to Greenup. They there received their pay checks, and started home, but before they had passed out of town the

accident occurred. Bradford testified that they were under the directions of Warnock at the time of the accident, and that they went to Greenup under his directions, and that the trip they made was made under his supervision.

There was a stipulation among the parties to this effect: "The said Warnock was on the business of the Cincinnati Gas Transportation Company at the time of the accident, and he was killed while in the performance of his duty as an employee of said Cincinnati Gas Transportation Company." It is established, therefore, by the evidence, that Warnock and Wright and Bradford were on the business of the Cincinnati Gas Transportation Company at the time of the accident, and he was killed while in the performance of his duty as an employee of that company, unless there is some fact or circumstance which tends to a contrary conclusion.

Counsel for appellants rely on the case of City of Louisville v. Bott's Adm'x, 151 Ky. 578, 152 S. W. 529. They say the opinion in that case is conclusive of the question here involved. The facts in that case bring it very close to the case under consideration, and it would be difficult to make a distinction. Bott was employed as a bartender in the saloon of Al G. Byer. As agent for his employer he purchased of one Elliott an electric piano for use in the saloon of his employer; a wagon belonging to Henry Byer was secured to haul the piano to the saloon of Al G. Byer. The wagon was driven by Zorn, an employee of Henry Byer. At the time of the accident, Bott and two other men were in the wagon, which was driven by Zorn. The evidence tended to show that Bott was in control of the wagon and driver, and there was evidence to the effect that Zorn was driving the wagon at a negligent rate of speed when the accident occurred. It was held, in that case, that, if Bott was in control of the driver and vehicle, the negligence of the driver, if any, was imputable to him. The court approved a quotation from 29 Cyc. 545, to the effect that it is the universal rule that the negligence of a servant is imputable to the master to prevent recovery by him for injuries to which the servant's negligence contributes; in other words, the master assumes the risk of the negligence of the employee, unless the negligent act of the servant was not committed while acting within the scope of his employment. The rule is carried to the extent that

knowledge of danger on the part of the servant is also imputed to the master. Unless the relation of master and servant exists between the parties, the acts of one, although done in the interest of the other, will not be imputed to the other. In support of the principle thus stated the court, in that opinion, cited Louisville & N. R. R. Co. v. Armstrong, 127 Ky. 367, 105 S. W. 473, 32 Ky. Law Rep. 252, Toner's Adm'r v. South Covington & Cincinnati Street Railway Co., 109 Ky. 41, 58 S. W. 439, 22 Ky. Law Rep. 564, and several foreign cases. In that case the court directed that an instruction be given to the effect that, if the evidence established that Bott was the agent of Al G. Byer to take charge of the removal of the piano, and that he had charge of the wagon and men removing the piano, and control of the driver of the wagon, and if the evidence should further establish that the driver's negligence, if any there was, so contributed to the death of Bott that, but for such negligence, he would not have been killed, such negligence of the driver, if any, should be imputed to Bott.

In the case before us the evidence shows that Warnock was in control of the other two employees, and was engaged in the discharge of his duty at the time of the accident. The same principle appears to have been adhered to in the more recent opinions of Standard Oil Co. of Kentucky v. Thompson, 189 Ky. 830, 226 S. W. 368, and Louisville Lozier Co. v. Sallee, 167 Ky. 499, 180 S. W. 841. The principle is announced in many foreign opinions.

Blashfield's Cyclopedia of Automobile Law, vol. 2, p. 1145, thus states the rule: "The negligence of the driver is said to be imputed to the passenger, where the passenger controls or has the right to control the movements of the vehicle in which he is riding, or where the driver and the passenger are engaged in a common enterprise, or where the driver is engaged in an enterprise of any kind for the use and benefit of a passenger, and is subject to his control."

In 3 Labatt on Master and Servant, sec. 1232, there is this statement of the rule: "In an action against a stranger the negligence of a coemployee is imputed or not to the injured servant, according as the former was or was not the agent of the latter."

It is argued by counsel for appellees that under ordinary circumstances a guest or invitee of the owner or

operator of an automobile, who is riding therein and having no control over the driver or automobile in which he is riding, is not required to do more than exercise ordinary care to protect himself from danger, and that the guest, or invitee, is not bound to be charged with the negligence of the driver, and such negligence ought not to be imputed to the guest. That rule has been announced by this court in a number of cases. Prichard v. Collins, 228 Ky. 635, 15 S. W. (2d) 497; Veach's Adm'r v. L. & N. R. R. Co., 190 Ky. 678, 228 S. W. 35; Louisville & N. R. R. Co. v. Scott's Adm'r, 184 Ky. 319, 211 S. W. 747; Ray v. Ray, 196 Ky. 579, 245 S. W. 287; Milner's Adm'r v. Evansville Railway Co., 188 Ky. 14, 221 S. W. 207.

Counsel for appellees state in their brief:

"It is therefore necessary, in order that Wright's negligence be imputed to the decedent, that the relationship of master and servant, or principal and agent, existed at the time of the accident, or that they must be held to have been engaged in a common or joint enterprise or undertaking at that time."

That is a fair statement of the question. It is contended by counsel for appellees that no such relationship existed between Wright and Warnock as master and servant, or principal and agent; that they were not engaged in a joint enterprise or undertaking such as made them, or any of them, responsible for the acts of the other. It is their contention that the car in which Warnock was killed was the private car of Wright, being driven by him at the time for his own purposes, free from the control or operation of Warnock, or Bradford, or of the Cincinnati Gas Transportation Company; that the relationship sustained between Wright and Warnock at the time of the accident was that of owner, or driver, on the one hand, and guest, on the other; that at the time of the accident the decedent was not the employer, or master, of Wright, nor was he his principal, and for these reasons the negligence of Wright, if any, should not be imputed to Warnock. They admit that in Kentucky the law is that, if the master, or principal, is injured by any negligence of an inferior servant, or agent, who at the time is engaged in the service of such master, or agent, and carrying out the duties of his employment in furtherance of the business and purposes

of the master or principal, the negligence of the servant, or agent, is imputed to the master, or principal. They admit that such is the rule announced in City of Louisville v. Bott's Adm'x, supra. But they insist that the facts in this case do not show that the relationship of master and servant, or principal and agent, existed at the time the injury was sustained, and that the acts claimed to constitute negligence did not arise out of or in the course of the employment, or service, of the master.

Counsel for appellees say that the text-writers and courts have found it difficult to lay down a fixed and fast rule as to when and where and under what circumstances the relation of master and servant, or principal and agent, exists, and that because of the difficulty that the courts have found in establishing a fixed rule the litigant is left in a turbulent sea of conflicting statements and decisions, from which he must work out his own conclusions under the facts of each particular case. They do not disagree with the principles of law that counsel for appellants contend for, but they say that the facts in this case take it out of the rule contended for by counsel for appellants. They cite and rely on the text found in R. C. L. vol. 18, p. 585, where it is said:

"According to the weight of modern authority, when the employee, either by virtue of his contract of employment or under a rule or custom of his employer, is accorded the same means and privileges of transportation over the lines of his employer as an ordinary passenger for hire, then, while riding upon his employer's cars at a time when, under his contract of employment, he is neither under the control of his employer nor obliged to perform any service for it, he is to be regarded as a passenger, and that under such circumstances it is immaterial that the employee be either going to or coming from his place of work."

Learned counsel may have overlooked one very important fact in this case, and that is that Warnock, Wright, and Bradford had no fixed and definite place of employment. They went to points on the line where their services were required. It is because of this fact that many of the cases cited by counsel for appellees are not in point. The employee in nearly all of the cases relied on had a fixed place where he performed his duties for

the master. For instance, in the case of Harris v. Lam Coal Co., 172 Ky. 767, 190 S. W. 121, relied on by appellees, this court held that, where a servant who was employed as machine foreman was injured by going to a place in the mine where an explosion occurred, when his duties as machine foreman did not require him, to go, and he was acting purely as a volunteer, the master was not liable.

Another case relied on is that of Zornes v. C. & O. Railway Co., 176 Ky. 768, 197 S. W. 438. The facts in that case showed that a servant working for a railroad company undertook to descend by means of a block and tackle from a trestle to the ground. The court held that the company was not liable for injuries sustained by him by reason of the failure of another employee to properly adjust the block and tackle, as the injured servant was not directed or requested, in the course of his employment, to use it in that way.

Another case relied on by appellees is that of Sandy Valley & Elkhorn Railway Co. v. Bridgman, 168 Ky. 219, 181 S. W. 1101. That case has more similarity to the one under consideration than the two just mentioned. It was there held that, when the servant is using premises of the master set apart for his use in going to and from his home and his work, he will be treated as in the employment of the master while so using the premises, and the duty will be imposed upon the latter of furnishing him a reasonably safe place. But to hold the master liable in such a case it must appear that he furnished, or set apart for the use of his employees, the way, or the means, for him to travel back and forth, and the injury must have been caused by some defect in the way or means, or caused by the negligence of some servant of the master acting at the time under his direction, or within the scope of his employment. In that case it was contended that a railroad company furnished a hand car for the convenience of its employees in going to and from their work and their homes, and one of the employees was injured while on the car by the negligence of a coemployee, also on the car. It was held that the company was not liable, as the coemployee was not acting for it, and the injury was not due to any defect in the place or appliance it had furnished. In that case it was held that the employee with Bridgman at the time of his injury was not a foreman, or in any way superior in authority to him; that

they were both common laborers working for the company in the same grade of employment.

The other Kentucky case relied on by appellees is that of Courier-Journal Job Printing Co. v. Haag, 155 Ky. 248, 159 S. W. 789. In that case the facts showed that Haag was employed to work on machines in a printing establishment. It was held by the court that the rule that the master must exercise ordinary care to furnish to the servant a reasonably safe place to work only applies to the place where the servant is directed by the master to work, and that when the servant voluntarily leaves the place of work assigned by the master, and without his knowledge or consent takes up work at another place, the servant gets beyond the limit of duties imposed by law upon the master.

Neither of the four cases decided by this court and relied upon by counsel for appellees sustains his point. But they say that the opinion in the case of Osborne's Adm'r v. C., N. O. T. P. Railway Co., 158 Ky. 176, 164 S. W. 818, Ann. Cas. 1915D, 449, supports their contention. It was there held that the time that the employee may occupy in going from his home, or any other place, to the point at which his duties connected with the movement of the train were to begin, should not be counted in estimating the hours of service he was employed. That is another case where the place of employment was fixed. He had to go to and from the train. That case does not support appellees.

It is true that the evidence fails to disclose that Warnock, Bradford and Wright transacted any business in behalf of the company, except the work down on Laurel creek. It is contended that when that work was finished their duties were over, but we cannot agree with that contention. They were engaged as laborers on the line. They had gone to Greenup under the directions of Warnock, the foreman, and they were leaving Greenup under his directions. As long as they were under his directions and control of the foreman, they were engaged in work for the employer.

Counsel for appellees rely on a Maryland case, Dorchester County Com'rs v. Wright, 138 Md. 577, 114 A. 573, 574. If the opinion in that case is in conflict with the opinions of our court, we will follow our own opinions. The court said, in that case: "There is nothing in the testimony to show that the appellee was traveling in the car in any capacity that gave him the right to direct or

control its operations. The proof indicates that he was accompanying the owner as a guest.''

If the testimony showed, in that case, that the employer did not direct or control the movements of the driver of the car, and further showed that he was accompanying the owner as a guest, these facts necessarily required the application of a different rule from that necessary to apply in the case before us, because the facts in this case show that Warnock directed and controlled the two laborers who were with him, and the evidence does not show that he accompanied Wright as a guest. Our conclusion, from all of these authorities, is that appellants were entitled to the instruction offered substantially as set out above, and which was given on the first trial.

It is insisted by counsel for appellants that, if the evidence disclosed that the crossing was more than ordinarily dangerous, the court should have instructed the jury that it was the duty of the driver of the car and Warnock to exercise increased care commensurate with such danger. That is the rule announced in Southern Railway Co. v. Winchester's Executrix, 127 Ky. 144, 105 S. W. 167, 32 Ky. Law Rep. 19, and in the case of Louisville & I. R. Co. v. Schuester, 183 Ky. 504, 209 S. W. 542, 4 A. L. R. 1344. It appears, therefore, that the offered instruction, which was refused, was not defective because it embodied this idea.

It is also argued that the duty to exercise increased care commensurate with the danger, if the evidence disclosed a more than ordinarily dangerous crossing, should not have been applied to the appellants, because the railroad company, in recognition of the extra hazardous nature of the crossing, had installed an electric warning bell; consequently, it would not have been proper to have given any instruction as to its duty to provide or install any local device for the protection of travelers. This was so held in Louisville & Nashville Railroad Co. v. Jameson's Adm'x, 214 Ky. 552, 283 S. W. 1026; Louisville & N. R. R. Co. v. Adams, 205 Ky. 203, 265 S. W. 623; Payne v. Elkin, 202 Ky. 285, 259 S. W. 349.

It is urged by counsel for appellants that the first instruction was erroneous, in that it advised that ''It was the duty of the defendant railway company, acting by its employees, agents, or servants in charge of its locomotive engine in question, or the track or tracks or ways of said company at the time and place of the acci-

dent referred to in the evidence, to give, or cause to be given, reasonable notice or warning, of the approach of the engine.''

The court probably should have omitted from the above quotation ''or the track or tracks and ways of said company.'' But we find no substantial error in the use of that language in the instruction, because the instruction points out specifically further along that the warning was to be ''by either ringing the bell or blowing the whistle of said engine, or doing same alternatively, and to also keep a reasonable lookout ahead of his engine for any person or vehicles who was using the crossing or could be reasonably expected to do so and in danger of being struck,'' etc.

It is argued that the necessary meaning of the instruction was to submit to the jury the question as to whether or not signals of the train's approach were given by the electric crossing bell located at the crossing. The instruction as written may be susceptible of that construction. There had been an amended petition filed after the first trial, alleging negligence in that the electric crossing bill was not working, but this amended petition was withdrawn before the last trial. It was held in the case of Monroe v. Standard Sanitary Manufacturing Co., 141 Ky. 549, 133 S. W. 214, that, where a recovery is sought for a breach of a particular duty, it is essential that the facts and circumstances attending the breach should be pleaded, because special, or particular, acts of negligence are not covered by a general allegation of negligence; that, if one is injured at a railroad crossing, under a general allegation of negligence he may show any act of negligence on the part of those in charge of the train relating to the management or operation of the train, or the observance or failure to observe statutory requirements as to signals, but under such an allegation he could not show that the injury was due to a defective or improper condition of the crossing, or that a frog was out of condition, or improperly constructed; that, if negligence in these particulars was relied on, it must be specifically pleaded.

Counsel for appellees are insisting that the trial court abused a sound discretion in setting aside the first verdict of the jury and granting a new trial, and they have prepared their bill of exceptions and brought the record here on that point. As has been stated, the court submitted an instruction on the first trial advising the

jury that, if either Wright or Warnock were guilty of contributory negligence, the appellees could not recover. They insist that the giving of that instruction on the first trial did not bring about a favorable result for appellants, as a larger verdict was returned when it was given. That may be true, but, if there was any evidence of contributory negligence, the instruction should have been given on the last trial, and while such evidence is meager, to say the least of it, there was enough to require the giving of an instruction on contributory negligence.

The trial court does not appear to have given any reason for the granting of the new trial, and his reason must be found in one or the other of the grounds embodied in the motion for a new trial. All of these grounds are eliminated by a casual examination of the record, except the one based on alleged erroneous instructions, or the one based on the alleged excessive verdict. It is pointed out in brief for appellants that the new trial was granted because of an error in instruction No. 1 given by the court on the first trial, to the effect that, if it believed the crossing to be unusually dangerous, it was the duty of the railway company to exercise increased care commensurate with the danger. It is contended by counsel for appellants that such an instruction, under the evidence, would have been proper, if no crossing safeguards had been installed; but, having installed an electric bell, it was relieved of the duty of exercising increased care commensurate with the danger. It has been so held in the cases of Louisville & N. Ry. Co. v. Jameson's Adm'x, supra; Louisville & N. Ry. Co. v. Adams, supra; Payne, Agent v. Barnette's Adm'r, 196 Ky. 489, 244 S. W. 896.

It is admitted by counsel for appellees that these cases hold that, where the railway has installed an electric crossing bell at a crossing, it is error to give the increased care instruction; but they argue that these opinions hold no more than that such an instruction should not be given, defining the "warning" of the approach of the train. It is argued that, if the railway company has installed such safeguards, those in charge of its train are not relieved of exercising increased care commensurate with the danger at such crossing in so far as the care relates to the rate of speed, or keeping a lookout, or to keep the train under reasonable control. There is much force in the argument advanced, but, if it should

be conceded that it is sound, it would be necessary to embody such language in the instruction as would indicate to the jury a distinction between what may be termed "warning" of the approach of the train and the other duties, and, as this was not done, even if it should be conceded that a modified form of the increased care instruction should have been given, the instruction was erroneous. This court is slow to reverse the judgment of a trial court awarding a new trial, and will not do so unless it appears that the trial court has misconceived the law governing the trial of the case, or has abused a sound discretion. Brown v. L. & N. R. R. Co., 144 Ky. 546, 139 S. W. 782; Beall v. Louisville Home Telephone Co., 166 Ky. 345, 179 S. W. 251; Chesapeake & O. Railway Co. v. Stone's Adm'r, 200 Ky. 502, 255 S. W. 134; Robenson v. Turner, 206 Ky. 745, 268 S. W. 341.

Judgment reversed, and cause remanded for proceedings consistent with this opinion. Affirmed on cross-appeal.

Whole court, except Judge WILLIS, sitting.