## Chesapeake & O. Ry. Co. v. Coates.

(Decided Dec. 14, 1937.)

(As Modified on Denial of Rehearing Feb. 15, 1938.)

LeWRIGHT BROWNING for appellant.
WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

Curtis B. Coates recovered a judgment against the Chesapeake & Ohio Railway Company, a corporation, in the Boyd circuit court for the sum of $503.25, with interest from the 6th day of November, 1936, until paid. Appellant appeals from that judgment. It bases its appeal on the following alleged errors: (1) The verdict is contrary to the overwhelming weight of the evidence; (2) the instructions are erroneous in that they submitted to the jury issues as to which there was

no contrariety of evidence; and (3) error in the admission of incompetent evidence. We will discuss the alleged errors in their order.

The accident complained of occurred at the Twenty-Third street crossing of the railroad tracks in the city of Ashland, Ky., on the 23d day of January, 1936, between 2:30 and 3 o'clock in the afternoon. It was a very cold day. The temperature was about eight degrees below zero. The earth was covered with snow and ice. At this crossing there are three railroad tracks. The first one is known as the eastbound main line track; the next, the westbound main line track; and the third track was a switch or side track. On that day and at the time stated, appellee, on endeavoring to go to his work at the American Rolling Mill Company, reached Twenty-Third street and traveled thereon in his automobile north to the railroad. He was operating his automobile at a low rate of speed, approximately 8 miles an hour. Before reaching the tracks, he looked both ways for trains, but saw none. There were flasher lights on poles near the crossing of the street over the railroad tracks. As he approached the railroad, he noticed these lights were not flashing. He then moved on with the thought that no train was coming, until within about 15 or 20 feet of the railroad crossing. On the west, the Imperial Ice Cream Company had a building, and the Crystal Lumber Company a building that extended out to the railroad on the east side of Twenty-Third street. While his automobile was moving at this slow rate of 8 miles an hour, he proceeded along the street. He looked to the west for the approaching eastbound train, but saw none. He then moved up to about the first track; then looked toward the east for a westbound train, and, as he did so, heard for the first time the sound of the whistle of the approaching train, but it was so close that he was struck there and his injuries resulted. He further stated he could not have seen the approaching train until he was within 15 or 20 feet of the track and not until the train of cars were within 50 feet of him; his view was obstructed by the building of the Crystal Lumber Company and a mound of dirt that the Crystal Lumber Company had piled there. It was about 4 feet high and covered by snow 10 inches deep. At this point the Crystal Lumber Company had

a switch that was called a spur track. This pile of dirt was at the termination of the switch. On the side of the railroad were posts on which the flasher lights, referred to, were placed; that these obstructions prevented him from seeing the approaching train until it was within about 50 feet of him.

He stated further that, as he approached the railroad tracks, he could have seen plainly the flasher lights, had they been working, for 150 to 200 feet before reaching the crossing; that, as he drove toward the crossing, the right-hand divided window on his Chevrolet automobile was open, making a crack of about 3 inches, through which he could have heard the train, had it whistled. He said his hearing and eyes were good; that the only time that he heard the whistle, or any noise of the train was just about the time it struck him; in going to the track, there is an incline that is very steep for about two and a half feet; when he was struck he was in his automobile, and when his automobile was struck by the train his mind went blank and he knew nothing more for some time; when he did come to himself he was 355 feet down the track from where his automobile was stricken. He was out of his automobile and two men had hold of him, but he did not know who they were. His left wrist was cut and there was a cut on the right side of his head about 3 or 4 inches long; his ear was torn loose some way and his right shoulder was bruised by the ligaments being torn loose.

The extent of his injuries, his loss of time, damages to his automobile, his clothing, doctors' and hospital bills, sued for, are, in fact, not seriously denied by the evidence of appellant. The only claim made is that the verdict in holding appellant responsible for the injuries is contrary to the weight of the evidence.

The action is predicated upon the general negligence of appellant in operating its train of cars at the time and place of the alleged injury. That part of the petition that is the basis of the cause of action for the damage of $2,500, sought by appellee, is as follows:

"Plaintiff further says that on the morning of the said day, January 23rd, 1936, while he was driving his said automobile on Twenty-Third Street

and going north and approaching Twenty-Third Street, and while traversing said street in a northerly direction, and while exercising ordinary care for his own safety, that said passenger train of the corporate defendant approached the Twenty-Third Street Crossing in such a careless, negligent and reckless manner and by the said corporate defendant, its agents, servants, and employees, carelessly, negligently and recklessly operated the said train in such a reckless manner upon and over the said crossing as to thereby strike, run upon and over this plaintiff's said automobile and injuring this plaintiff. * * *''

Later, an amended petition seeking special damages was filed by appellee. By that he sought damage to his automobile in the sum of $450; hospitalization, $21.25; physician's fee, $50; loss of three weeks' time, $95; damage to his suit of clothing, $18; and to his overcoat, $18—making a total of $652.25. However, the entire damage was not to exceed $2,500. Both the original and amended petitions were traversed. The contributory negligence of Coates was charged to be the proximate cause of the injury and damages sought.

It is a well-settled rule that, where general negligence of the operating of the train of cars constituting the cause of action is relied upon, any fact showing the negligence may be proven.

In the case of Monroe v. Standard Sanitary Manufacturing Company, 141 Ky. 549, 133 S. W. 214, 215, we said:

" 'In actions of personal injury resulting from negligence, it was and still is sufficient for the plaintiff to allege, in general terms, that the injury complained of was occasioned by the carelessness and negligence of the defendant, without stating the circumstances with which the infliction of the injury was accompanied, in order to show that it was occasioned by negligence.' * * *

"These rules apply alike to all classes of cases where a recovery is sought for an injury resulting from a breach of duty, whether the parties litigant stand in the relation of master and servant toward each other or not. Thus, if one is injured at a rail-

road crossing, under a general allegation of negligence he may show any act of negligence on the part of those in charge of the train relating to the management or operation of the train, or the observance of, or failure to observe, the statutory requirements as to signals, etc.''

This rule has been consistently followed to this time.

In the instant case the negligence relied upon was the failure on the part of the agents and servants in operating the train at and over the public crossing where the injury is alleged to have occurred. A part of the evidence offered by appellee was the failure of the operation of certain flasher lights used by appellant to notify travelers, who are about to pass along Twenty-Third street and over the public road crossing, which flashers should function on the approach of its train.

In the case of Monroe v. Standard Sanitary Manufacturing Company, supra, where the allegation of general negligence was charged, we said:

''The rule is, that any evidence is competent that tends to establish the carelessness or negligence on the part of the servants or employees in charge of the train of cars or of their observance of or their failure to observe the statutory requirements as to signals, etc.''

There is no statute requiring flasher lights at public crossings. The operation of or failure of flasher lights to operate is in no way a part of or connected with the operating of the train of cars on the part of those in charge of the running of the train. The failure of the flasher lights to function is not such negligence that can be proven under the allegation of general negligence. As to the operation of the train, in the case of Chesapeake & O. Railway Company et al. v. Warnock's Adm'x et al., 232 Ky. 340, 23 S. W. (2d) 558, we said in substance that it was error, where an electric crossing bell was located at the crossing, to submit the question to the jury as to whether or not such signals were given as a basis of the negligence; that particular facts of that character could not be proven or relied upon under a general allegation of negligence. It

thus follows that the evidence, as to the failure of the flasher lights to function before and at the time appellee received the injury complained of at the public crossing shown in the evidence, was incompetent for the purpose at least of establishing negligence in the operation of appellant's train of cars. It is in evidence that appellee listened for a signal of a bell or whistle, but heard none; that the engine of appellant's train struck part of his automobile and carried him and his automobile 350 feet with the train from the crossing; that the obstructions near the crossing prevented him from seeing the approaching train before reaching the crossing. He is corroborated in part by C. W. Hart, who stated that, in reaching the crossing, the automobile must pass up a steep incline and, when it gets leveled up and off of the grade, it is on the tracks; that to reach that point the automobile would have to be within 15 feet of the tracks before the operator of the automobile could see up the railroad 50 feet. Joe Riddle, another witness, testified that certain buildings near the track obstructed the view and that a pile of dirt covered with snow upon this day was near the crossing, and it obstructed the view of appellee in operating his automobile; that there was no sound of a whistle given that he heard, nor was there a sound of a bell. At the time of the coming of the train, he was looking out for it; that he was in a position to hear the approach of the train and could hear the blast of the whistle or the ringing of the bell, had it been ringing; and that it failed to ring.

Appellant introduced a number of witnesses, who stated that the bell was ringing all the time; that the whistle on the engine sounded loud and long before approaching the crossing; that the flasher lights were functioning on the approach of the train; that the movement of the train did not exceed 18 or 20 miles an hour; and that the engineer kept a lookout.

Therefore, on the question of negligence upon the part of the railroad company and the contributory negligence upon the part of the defendant, the evidence was conflicting and contradictory. The jury, as we have often stated, were the sole judges of the facts. We cannot say that the verdict was not supported by the evidence. It is true that the jury might have rendered

an opposite verdict, which would have been, under the evidence, approved by this court.

It is further insisted that the instructions are erroneous, in that they submit issues to the jury as to which there was no contrariety of evidence. It is claimed that instructions Nos. 2 and 3 were erroneous to the effect that they submitted to the jury that it was the duty of appellant's employees in charge of the train to maintain a proper lookout and to operate the train at a reasonable rate of speed, and that, if there was a failure to perform either duty, appellee is entitled to recover. Counsel admits that, as an abstract proposition, the instructions were correct, but the criticism is that on the issues presented to the jury, in those instructions, there was no contrariety of evidence. We are unable to agree with counsel.

The evidence is to the effect, on the question of keeping a lookout, that the fireman, who was on the same side of the engine of appellee, as he approached the road crossing, stated that he discovered appellee within about 80 or 90 feet of the crossing. Other witnesses for appellant stated that the approach of the train could be seen by appellee at a far greater distance than that, had the fireman been, in fact, keeping the proper lookout. He could have seen appellee when he was much further from the crossing than within 80 or 90 feet. The fact that the engineer stated that at all times he kept a lookout was not to be accepted as true by the jury, nor was the speed of the train, which witnesses for appellant stated was moving at the rate of 18 or 20 miles an hour, to be accepted as reasonable, under the circumstances presented by the evidence. It was in evidence, and undenied, that at the time of the accident the earth was covered with snow; that the weather was extremely cold, the thermometer seven or eight degrees below zero; that the tracks on that account were slippery. Also, it was in evidence that under those circumstances the brakes of the train would not readily respond on account of the coldness of the atmosphere, and that the train could not, therefore, be controlled and operated as easily as upon other days when the weather was warmer and when there was no snow or ice. There is no fixed or settled rule as to what rate of speed the movement of the train may be declared,

as a matter of law, reasonable. That question depends upon the circumstances and the facts developed in each particular case. It was therefore proper to submit to the jury the question of keeping a proper lookout, and whether or not the train was running at a reasonable rate of speed at the time of the accident. Therefore, we find no error in the instructions.

It is further insisted that the court admitted incompetent evidence that was prejudicial to the rights of appellant; that the witness Joe Riddle was permitted to state that as he was approaching the Twenty-Second street crossing, which is another crossing west of the one on Twenty-Third street, where the accident occurred, that he noticed that the warning lights on that crossing were not working. To that evidence appellant objected and moved to exclude from the consideration of the jury, but such motion was overruled by the trial court, upon the avowal of appellee's counsel that he would produce testimony that the lights on the Twenty-Second and Twenty-Third street crossings were on the same circuit and went off and on at the same time.

The rule of the court is as follows:

"Defendant moved the court to exclude from the jury the testimony of the witness that the lights at the 22nd Street crossing were not working. The court thereupon stated that such testimony would not be competent unless it was shown that the lights at the 22nd Street crossing were on the same circuit as the lights at the 23rd Street crossing, and that the two went off and on at the same time. Counsel for plaintiff thereupon avowed that he would introduce testimony that the lights at the 22nd and 23rd Street crossings were on the same circuit and that the lights at both crossings went on and off at the same time. Thereupon the court overruled the motion of the defendant to exclude from the jury the foregoing testimony, to which ruling of the court the defendant excepted."

We are unable to find in the record where the avowal made by the attorney for appellee was kept. We find no evidence offered by appellee that shows that the current that produced the lights at the Twenty-Third street crossing is on the same circuit as those

lights on Twenty-Second street. This testimony was left for the jury to consider, which was error.

After carefully considering the entire evidence, we have reached the conclusion that this testimony was prejudicial to the rights of appellant. On account of that error, which testimony no doubt influenced the jury in reaching its verdict, such evidence was prejudicial to the substantial rights of appellant.

Wherefore the judgment is reversed, with directions for further proceedings consistent herewith.