## Louisville & Nashville Railroad Company v. Jameson's Administratrix.

(Decided March 26, 1926.)

### Appeal from Harrison Circuit Court.

1.  Trial—Several Witnesses' Testimony that They did Not Hear Train Bell Held to Create Scintilla Requiring Submission of Issue to Jury.—In action against railroad for death at crossing, testimony by four or five witnesses, situated where they could hear,

that they did not hear train bell, created scintilla requiring submission of case to jury.

2. Railroads.—Railroad may not exonerate itself from giving crossing signals by any local precautions established by it at crossing.

3. Railroads—Instruction Requiring Such Signals and Precautions to Warn Travelers at Crossing as to Prevent Injury Held Erroneous as Requiring More than "Ordinary Care."—Instruction requiring railroad company to use such signals and take such precautions to warn travelers at crossing as to prevent injury to them held prejudicially erroneous as requiring it to so operate trains over crossing as to insure against accidents, whereas all that is required is "ordinary care," which is care ordinarily prudent person would exercise under same or similar circumstances.

4. Railroads—Instruction Leaving Jury to Determine Whether it was Railroad's Duty to Adopt Other Local Means to Warn Travelers than Those Adopted Held Error.—In action against railroad for death at grade crossing, at which it maintained electric bell and banner or "wigwag," instruction leaving jury to determine whether it was defendant's duty, in exercise of ordinary care, to provide other local means to warn travelers, was error.

5. Railroads—Instruction Held Erroneous as Excluding Consideration of Rider's Negligence in Remaining on Motor Truck After Becoming Aware of Driver's Negligence.—In action for death of one riding in truck struck by train at crossing, instruction that driver's negligence could not be imputed to decedent, and would not relieve defendant, unless it was sole cause of death, and that plaintiff could recover, notwithstanding it, unless decedent failed to exercise ordinary care, held erroneous as excluding consideration of decedent's negligence in remaining on truck after becoming aware of driver's negligence.

6. Railroads—Requested Instruction, Denying Recovery if Local Signal Contrivances were Reasonably Sufficient, and Train Moved Over Crossing at Reasonable Speed, and Gave Warning by Ringing Bell, Held Proper.—In action against railroad for death at crossing, instruction to find for defendant, if local signal contrivances were operating and reasonably sufficient to warn ordinarily prudent person, and defendant moved train over crossing at reasonable control, and gave warning of its approach by ringing engine bell, should have been given.

7. Railroads—Requested Instruction as to Occupant's Duty to Take Precautions Against Truck Driver's Negligence Held Proper, Except as to Statement that he did Not Exercise Ordinary Care and Assumed Danger by Voluntarily Boarding Truck.—In action against railroad for death of one riding on motor truck struck by train at crossing, instruction defining decedent's duty to take precautions of ordinarily prudent person to relieve himself from consequences of driver's negligence, growing out of latter's intoxicated condition, and submitting defense that, knowing of such condition, decedent made no effort to abandon truck, etc., should have been given, but without further statement therein that decedent did

not exercise ordinary care and assumed danger incident to driver's intoxication by voluntarily placing himself on truck.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, E. M. DICKSON and HANSON PETERSON for appellant.

M. C. SWINFORD, SR., M. C. SWINFORD, JR., and C. M. JEWETT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The personal representative of James Howard Jameson, who is the appellee and was plaintiff below, recovered a judgment against the appellant and defendant below, Louisville and Nashville Railroad Company, in the Harrison circuit court for the sum of $5,000.00 as damages to decedent's estate because of the alleged negligent destruction of his life by defendant in the collision of a south bound train with the truck in which he was riding at the crossing of Bridge street and defendant's track in the city of Cynthiana on March 20, 1923, at about 5:30 p. m. The petition contained the usual averments as to the negligence of defendant and that the crossing was much used and an exceptionally dangerous one. The answer denied the material averments of the petition and contained a general plea of contributory negligence on the part of the decedent. An amended answer filed by defendant, after the evidence was heard, averred, in substance, that one Derrickson, who was the driver of the truck, was intoxicated at the time, and that decedent knew it, and that but for such intoxication the collision would not have occurred, and that decedent possessing such knowledge made no effort to abandon the truck or to protect himself from the danger incident to such intoxication. The affirmative allegations of the answer and its amendment were controverted, resulting in a verdict for the amount stated, and defendant's motion for a new trial having been overruled it prosecutes this appeal.

Numerous grounds were relied on in the motion for a new trial, but they are all practically abandoned on this appeal, except, (1) error of the court in overruling defendant's motion for a peremptory instruction, (2) erroneous instructions given, and (3) refusal of the court to give instructions offered by defendant.

1. A brief statement of the substance of the testimony is necessary in determining each of those grounds.

Decedent and his four companions, including the driver of the truck, were engaged in hauling tobacco in hogsheads from a warehouse on the west side of the railroad to a redrying plant on its east side, thus requiring them to cross the railroad at the Bridge street crossing. The redrying plant was located on Church street, running parallel with the railroad and one block from it. In leaving the redrying plant Church street was travelled north to its intersection with Bridge street, and some 250 feet directly west from that junction was the railroad track; so that, from the time the truck turned into Bridge street the testimony without contradiction shows that the driver and each occupant of the truck could plainly see the crossing, there being no obstruction whatever. The colored man, Derrickson, was driving and he owned the truck. By the side of him on the seat was a co-laborer engaged in the common employment. Back of the cab covering the seat two others were sitting on the floor of the truck, while decedent was riding on the running board and immediately opposite the cab with his back to the north from whence the train was coming, with the curtain of the cab over his head, and was engaged in conversation with the one riding by the side of the driver on the seat. Defendant maintained immediately west of its south bound track (it being double at that point) an electric bell to which was attached what the witnesses designate as a "banner" or "wigwag" and it was swung out into the street from a steel arm constructed for its support about 12 or 14 feet above the surface of the street. It was a circle and some 24 or 30 inches in diameter. When the banner was in operation it swung to and fro like the pendulum of a clock and in its center there was a small circle covered with glass from which were shown a red and green light, flashing from one color to the other with each pendulum stroke of the banner. Each witness who testified in the case said that the banner was "wigwagging," as they put it, and the light was flashing, and every witness whose attention was directed to it also stated that the electric bell was ringing. Even those on the truck did not deny that the contrivance so erected by defendant was operating at the time so as to impart warning to the travellers on the street in all of the three methods indicated, except that some or all of them say that they paid no attention to discover whether the electric bell was ringing, but it was overwhelmingly

proven by numerous witnesses that the bell was ringing loud enough to have been heard for a much greater distance than from Church street to the crossing.

As to the signals from the train on approaching the crossing the large preponderance of the evidence was to the effect that the bell was ringing and that the whistle was blown for the station and for another country crossing just beyond it. Not only were those facts testified to by the operators of the train, but also by a number of bystanders, one of whom was a reputable attorney of the Cynthiana bar and who was at the crossing immediately preceding the accident and saw and heard the train coming as well as its bell ringing. However, some four or five witnesses testified that if the train bell was ringing they did not hear it, and under numerous decisions from this court such negative testimony creates a scintilla requiring a submission of the case to the jury where the particular fact in issue is a material one. The train was running, according to all the witnesses except the driver of the truck, at a speed of about six miles per hour and stopped at the usual place opposite the depot in the middle of the block just south of the crossing. The preponderance of the evidence also shows that the truck collided with the left side of the pilot of the engine rather than it colliding with the truck, but there was some evidence to the contrary. A number of witnesses testified that Derrickson, the driver of the truck, was intoxicated or that he acted and talked as though he was in that condition, and some of the witnesses also said his breath carried the odor of whiskey, and a bottle containing a small amount of liquor was found on some part of the truck.

Under the evidence as so briefly outlined defendant contends that it was entitled to a directed verdict, which it asked, but under our former opinions we do not think that position maintainable. It will be seen from some of the cases cited below, and there are others approving the same rule, that a railroad company may not exonerate itself from giving train signals on approaching a grade crossing by any sort of local precautions to warn travelers that it may establish at the crossing. Since, therefore, there was a scintilla of evidence (as we have hereinbefore indicated), produced by the negative testimony referred to, that the train gave no signals of its approach to the crossing, it can not be successfully contended under the rule *supra*, that the motion for a per-

emptory instruction made by defendant should have prevailed, and this ground urged for a reversal must be overruled, notwithstanding a verdict based upon the scintilla might be so flagrantly against the evidence as to authorize its setting aside on that ground, a question which we do not now determine.

2.    The court on its own motion gave to the jury six instructions, and under this ground complaint is made chiefly of numbers 1 and 3.    The urged objection to No. 1 relates to that portion of it saying: "Or if the jury believe from the evidence that the crossing was a much traveled crossing and because of its location and surroundings, unusually dangerous to travelers, and further believe from the evidence that sounding of the whistle or ringing of the engine bell as above described, or the operation of the signal bell *and* wigwag in the proof described, were not sufficient to give reasonable notice of the approach of trains at said crossing, and that this fact was known to the defendant, or by the exercise of ordinary care, could have been known to it, then it was the further duty of the defendant and its servants to use such *other* means or methods to *prevent* injury to persons using the crossing as in the exercise of a reasonable judgment would be considered necessary by ordinarily prudent persons operating a railway, and if you believe from the evidence that the defendant railroad failed to use such signals, means or methods to warn persons at the crossing of the approach of the train *and prevent injury to them* as in the exercise of a reasonable judgment would be considered necessary by ordinarily prudent persons operating a railroad and that by reason of such failure the train of defendant railroad struck the automobile in which decedent was riding and caused his death, you should find for plaintiff, unless you believe that Jameson was himself negligent as defined in instruction No. 2." (Our italics). One fatal objection to that excerpt from the instruction is that it required the defendant to use such signals and take such precautions to warn the traveler on the street as to "prevent injury to them," which was tantamount to requiring defendant to so operate its trains over the crossing so as to insure against accidents, when all that the law requires of it is to exercise ordinary care under the circumstances to avoid accidents and the care required being such as an ordinarily prudent person would exercise under the same or

similar circumstances. For the reasons indicated the instruction was prejudicially erroneous.

An equally meritorious objection to it is, that it left to the jury to determine whether or not it was the duty of defendant in the exercise of its required ordinary care to provide, install, and adopt *other* local means to warn travelers than the one it did adopt and to which we have hereinbefore referred and described, and gave the jury the right to measure the full duty of defendant even to the adopting or installing of gates, a flagman and any other additional means which it might conclude were necessary and for the failure to do which defendant would be liable. We condemned such an instruction under similar facts in the recent cases of Payne, Agent v. Barnett's Admr., 196 Ky. 489; Same v. Elkin, 202 Ky. 285, and L. & N. R. R. Co. v. Adams, 205 Ky. 203. In those cases we held, in substance, that when the railroad company adopted an effective means or device at the crossing for the purpose of giving warning to travelers of the approach of a train and it was in operation and the method of notification was reasonably sufficient to impart warning, it then complied with its duty with reference to local precautions at extra hazardous crossings, and that it should not be left to the jury to determine whether *other* and *additional* local means of warning should also be employed; for, if that were true, as said in the Adams case, "There would be no end to its (defendant's) burdens or period at which it could discharge its full duty, since whatever it may have provided the jury might still conclude that it had fallen short of its duty, and was, therefore, negligent. Some prior opinions to the Barnett case (but under dissimilar facts) employed language indicating a contrary view, chief among which is that of C., N. O. & T. P. Railway Co. v. Champ, 31 K. L. R. 1054. But without consuming time or space in pointing out the difference between the facts of that case and those of the Barnett, Elkin, Adams, and this case, we are convinced that the rule announced in the last ones is the correct one and more in conformity with the principles of justice and the rights of the parties. It is also the later expression of this court and upon a reconsideration in this case we have concluded not to depart therefrom. The court, therefore, was in error in submitting to the jury in its instruction No. 1 the matters discussed and complained of.

We have carefully read and considered instruction No. 3 and are unable to sustain the objections made thereto by counsel for defendant. It is almost if not an exact copy of instruction No. 5 given in the case of L. & N. Railroad Co. v. Scott's Admr., 184 Ky. 319, and which we held in that opinion was proper. But in this case defendant offered instructions A and C to which objections were sustained and the court refused to give them, which ruling, we think, was error as hereinafter pointed out, with the indicated modification of C. Those instructions related to the contributory negligence of decedent, and instruction No. 3 instead of saying: "Unless decedent was negligent in failing to exercise ordinary care for his own safety as defined in instruction No. 2," should have further said: "As defined in instructions Nos. 2, A and C," and with such modifications it was proper.

3. Defendant offered and the court refused instructions A, B, C, and D. The first three, we think, the court should have given with the hereinafter modification of C. No. A defined the duty of decedent in the exercise of the proper care on his part in approaching the crossing. No. B said to the jury that if the local contrivances for imparting notice were in operation and if they were reasonably sufficient to warn an ordinarily prudent person about to use the crossing, and that defendant moved its train over the crossing at a reasonable speed and under reasonable control and gave warning of the train's approach to it by the ringing of the engine bell, then the law was for the defendant and the jury should so find. No. C required the decedent to take whatever precautions an ordinarily prudent person would do under the circumstances to relieve himself from the consequences of the driver's negligence, if any, growing out of his intoxicated condition, and submitted the defense relied on in the amended answer, and which we think embodied the correct principle of law; but there should be omitted from that instruction the words, "said James Howard Jameson did not exercise ordinary care for his own safety, and he assumed the danger incident to said driver when he voluntarily placed himself on said truck while so managed and controlled by said Roscoe Derrickson while in an intoxicated condition," and the words "or by the exercise of ordinary care could have known of said intoxication," since the duty on the part of decedent to exercise such care to make the discovery was not pleaded, nor do we think the facts suf-

ficient to impose such duty. Winston's Admr. v. City of Henderson, 179 Ky. 220.

Before closing the opinion we deem it proper to say that the negative testimony in this case producing the scintilla to which we have hereinbefore referred was stronger than that found in the case of Johnson's Admr. v. L. & I. R. Co., 199 Ky. 524. The witnesses who testified to not hearing the signals in that case were so situated that it reasonably appeared they could not have heard them if given, and their negative testimony was so weak and incredible that it was totally disregarded in that opinion. But here the witnesses so testifying were sufficient in number and were so situated as to prevent such discrediting of their testimony as was done in the Johnson case, and under our prior opinions the issue as to giving train signals for the crossing should be submitted.

Wherefore, the judgment is reversed, with directions to set it aside and to grant the new trial, and for proceedings consistent herewith.