## Kelsch's Guardian v. Chesapeake & O. Ry. Co. et al. Kelsch's Administrator v. Chesapeake & O. Ry. Co.

(Decided Nov. 14, 1933.)

HUBBARD SCHWARTZ for appellants.

BROWNING & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal presents for review the trial of two actions, one for the injury of Robert Kelsch and the other for the death of Charles Kelsch by the collision of an automobile, in which they were riding, with a train of the Chesapeake & Ohio Railway Company, operated by Guy Hiles, engineer, on the 2d day of March, 1930, between the hours of 10 and 10:30 p. m. at the intersection of Third street and Seminary avenue in the city of Augusta, Ky. The train consisted of the engine and tender and several freight cars, all together about one-half mile in length. It was operated westwardly over Third street, and the automobile in which the Kelsches were traveling was going southwardly over Seminary avenue. The railroad yard was on the East side of Seminary avenue on which there were switching and yard tracks, a watchman's lookout house, the freighthouse, and a hump of earth, in height about five feet, used by the railroad company to stop cars. Also there were at that particular time on the side track, in the yard, five or six flat cars which the railroad company had placed during the day of March 2, 1930.

There was located at this crossing an electric crossing bell to warn travelers of the approach of trains. A watchman was kept at the crossing between the hours of 7 a. m. and 5 p. m., but he was not on duty

at the time of the accident. Also there was an electric bell at Frankfort street crossing one block west of the intersection of Third street and Seminary avenue and another at Hamilton avenue, 1,000 feet east of Seminary avenue.

It had been snowing on the night of the accident and at the time it happened there was snow on the ground. A cold wind was blowing "and it was a terribly cold night."

The automobile in which they were traveling was closed, except a little window at the top of the rear was partly open. Charles Kelsch was driving with his brother Robert and Rex McCane, they occupying the seat with him. The train was traveling at about the rate of 12 miles per hour, and the automobile in which they were riding, at less than 15 miles per hour just before reaching the railroads tracks. When within about 12 feet of the tracks, McCane said, "Lookout for trains." All of the occupants of the automobile leaned forward and looked up and down the tracks, but could neither see nor hear a train. Thereupon Charles Kelsch shifted into second and started to cross, and just as the automobile reached the main track they first saw the train immediately upon them, which struck the automobile killing Charles Kelsch and injuring Robert. The evidence is not clear as to whether the automobile came to a full stop or merely slowed up, but at the time they looked for the train, they could see in the direction from which the train came a distance of 150 feet. The cars on the side track were about two cars length from the crossing. The headlights on the engine were burning and the engine was nine feet higher than the flat cars.

The case was tried twice. The first resulted in a disagreement of the jury; the second in a verdict for the railroad company. In the first trial Robert Kelsch testified, and he admitted on the second trial that he did so, that at the time the automobile stopped or slowed down it was thirty feet from the track. On the present trial he testified that he could see a distance of 150 feet, but admitted that on the first trial he testified that he could see from the point where the automobile stopped or slowed up, in the direction from which the train was traveling, a distance of two squares. He explained this discrepancy in his testimony by saying that since the first trial he had measured the distance and discovered

it was 150 feet. Henry Carr, Stanley Cox, and Bess Reynolds were traveling in an automobile about 150 feet in the rear of the car occupied by the Kelsches and McCane. The testimony in behalf of the Kelsches is that the ringing of the signal bell and the sound of the whistle of the train were not heard at the time of, and immediately before, the accident. That in behalf of the railroad company establishes that the proper signals for the crossing were given by those in charge of the train and that the signal bell, at this and other crossings in the immediate vicinity, was in perfect condition and ringing at the time of the happening of the accident. The signal bells were inspected on the evening before and also the next morning, and they were properly and efficiently ringing, on approach of the trains at the crossing.

It is insisted by the guardian of Robert Kelsch and the administrator of Charles Kelsch that the facts in this case are comparable to those in Louisville & N. R. Co. v. Lucas' Adm'r, 98 S. W. 308, 30 Ky. Law Rep. 359; Louisville & N. R. Co. v. Treanor's Adm'r, 179 Ky. 350, 200 S. W. 634; Cox's Adm'r v. Cincinnati, N. O. & T. P. Railroad Co., 238 Ky. 312, 37 S. W. (2d) 859. What degree of care is required of railroad companies to protect travelers at a crossing depends upon the facts of each case and is a question for the jury. Cincinnati, N. O. & T. P. Railroad Co. v. Champ, 104 S. W. 988, 31 Ky. Law Rep. 1054. Evidence that a traveler was killed by a train at a public crossing and that the train did not give the usual or statutory signals of its approach is sufficient to take the case to the jury. Stuart's Adm'r v. Nashville, C. & St. Louis Railroad Co., 146 Ky. 127, 142 S. W. 232, There is no conflicting evidence in the present case as to whether the railroad crossing was extrahazardous or merely an ordinary one situated in a city the size of Augusta. The evidence that the occupants of the automobile were familiar with the crossing and its surroundings is not disputed. Nor is the fact Robert Kelsch admitted that on the former trial he stated to the jury the distance the approaching train could be seen was two squares, and on the present trial, 150 feet from a point where the automobile stopped or slowed down, although the side track was occupied by five or six flat cars. Under such circumstances the court properly refused so to instruct the jury as to

leave it to determine whether or not additional means of warning should have been employed at the time of the accident. Payne, Agt., v. Barnette's Adm'r, 196 Ky. 489, 244 S. W. 896; Louisville & N. R. Co. v. Jameson's Adm'x, 214 Ky. 552, 283 S. W. 1026; Stephenson's Adm'x v. Sharp's Ex'rs, 222 Ky. 496, 1 S. W. (2d) 957, 959; Payne v. Elkin, 202 Ky. 285, 259 S. W. 349; Chesapeake & O. Railroad Company v. Warnock's Adm'x, 232 Ky. 340, 23 S. W. (2d) 558.

In Illinois Central Railroad Company v. McGuire's Adm'r, 239 Ky. 1, 38 S. W. (2d) 913, 916, McGuire's death grew out of a street crossing accident in the city of Mayfield. The city was of the fourth class and it had enacted an ordinance requiring the presence of a watchman at the crossing of the street and the railway tracks at an acute angle, which was much traveled by the public. This court said:

"It appears that, if a requirement that an electric gong shall be maintained at a crossing in a city is authorized by the provisions of section 786, Ky. Stats., the requiring of a watchman at a crossing to give signals would also be authorized."

But we do not have that question before us in the present case, for no such ordinance was offered in evidence. It was shown to the satisfaction of the jury that the electric bell was ringing at the time of the accident and that section 786 was complied with by the railway company, in that it caused the bell to ring and the whistle to sound at the crossing, the negative testimony to the contrary notwithstanding.

In Stephenson's Adm'x v. Sharp's Ex'rs, supra, a wigwag or electric bell was operating at the time of the accident and the train whistled for the crossing. There was a total absence of the usual negative testimony as to the ringing of the bell and sounding of the whistle. The court approved the giving of a peremptory instruction, saying:

"Under such circumstances it should not be left to the jury to determine whether other and additional means of warning should be employed."

On the facts presented in the pending case the court did not err in refusing the instructions offered by the guardian and administrator. Those given to the jury are not now complained of. The sole contention

respecting the instructions is that those offered by the guardian· and administrator should have been given.

The court, over the objection of the guardian and administrator, permitted the railroad company and Hiles to prove that the electric bell at the intersection of Third street and Seminary avenue· was in perfect working order and actually operating on the following morning. Of the admission of this evidence the guardian and administrator vigorously complain. The testimony of the witnesses that it was in perfect mechanical condition and operating the next morning gave rise to the inference that like conditions existed at the time of the accident, and therefore was competent. Kennedy Transfer Co. v. Greenfield's Adm'x, 248 Ky. 708, 59 S. W. (2d) 978; Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164; Kentucky Utilities Co. v. White Star Coal Co., 244 Ky. 759, 52 S. W. (2d) 705; Union Light, Heat & Power Co. v. Lakeman, 156 Ky. 33, 160 S. W. 723.

It is our view that no error was committed in refusing the offered instruction, nor in overruling the objection to the evidence.

The railroad company argues that the instructions given by the court and the evidence heard by the jury are not properly presented by a bill of exceptions, and should not be considered according to the fixed rules of practice.

From the views we have expressed it is not necessary to consider this argument.

For the reason indicated the judgment is affirmed.