## Illinois Central Railroad Co. v. Henry.

(Decided May 29, 1934.)

TRABUE, DOOLAN, HELM & HELM, and JOHN W. BLUE, Jr., and MARSHALL P. ELDRED for appellant.

VERT C. FRASER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

To sustain his suit for damages for personal injuries, the appellee, Wilbur Henry, testified that on the night of October 12, 1932, he walked about a mile south of Blackford on the tracks of appellant Illinois Central Railroad Company, going home. As he crossed a cattle guard and had entered upon a public crossing of a dirt road, which led to his home a short distance away, and while he was on the extreme left edge of the track and just before he reached the traveled way of the road, he heard a train suddenly upon him, and as he turned he was struck by some part of the engine. No whistle had been blown or bell rung, and because of the sharp curve the light of the engine had shone to the side of the track and not upon him, and therefore he did not have any knowledge of the approaching train. This occurred about midnight. The next morning about 5 o'clock a friend discovered him lying at the foot of an embankment still unconscious. There was a pool of blood about two feet from the end of the cross-ties and the same distance from the wheel tracks of the county road where the injured man had apparently lain before rolling down the embankment. He suffered severe injuries on the head. The judgment for $1,375 is not questioned as being excessive.

The plaintiff's cousin who lived near the whistle post for the crossing, which was about a quarter of a mile back, happened to be in his yard as the train passed at five minutes of twelve. He testified that it was running fast and did not sound the whistle or ring the bell at that point nor beyond as he listened at the train until it had gone perhaps a mile and a half up the hill from the crossing. Another young man who was stay-

ing that night with the plaintiff's brother at his home down the road, perhaps 200 yards from the railroad, had gotten up to get a drink of water. He looked at the clock and it was five minutes to twelve. The brother was awakened by his friend getting up, and, while they were talking about Wilbur not having come home, they heard the train coming. They judged it was then somewhere along about the whistling post. They could hear it distinctly, and both testified unequivocally that no whistle was blown or bell rung as it came to the public crossing.

The defense proved that this was a loaded coal train with twenty-three cars and a caboose, and that as it approached the public crossing it was moving slowly and with a heavy exhaust as it was ascending the grade, and but little momentum had been gathered in the short distance since leaving the station at Blackford. The train men unequivocally testified that the whistle was blown for the crossing, and that the continuous noise of the moving train could be heard a great distance in the night. The enginemen testified that they were keeping a lookout, and that, while there is a sharp curve as the road crossing is approached, the headlights shine upon the crossing 125 or 150 yards ahead. They testified that the man was not on the track, and that they had no knowledge of his having been struck until about noon the next day. It is suggested that plaintiff had stolen a ride on the train and was injured when he jumped from it at the road leading to his home, but there is no evidence to that effect. The company produced a stenographic report of an interview had with the injured man at the hospital several days thereafter, in which he stated that he saw the headlight of the train on the trees as it was coming around the curve, and that he attempted to get out of the way of the train. The whole statement is susceptible to the construction that he was trying to get to the county road down which he lived before the train overtook him. The evidence as to his mental condition at the time of this interview is conflicting. The witnesses for the company were very emphatic and persuasive that he knew full well what he was saying, while the plaintiff and his witnesses testified that he was in a comatose condition and in such mental state as not to know what was going on. All of this, of course, went to the credibility of the plaintiff as a witness in his own behalf.

Although the plaintiff may have been a trespasser while walking along the track, when he came upon the crossing, his trespass ended and the railroad owed him the duty it owed the general public passing over the crossing. Thomas' Adm'r v. C. & O. R. Co., 245 Ky. 352, 53 S. W. (2d) 546, Cf. Louisville & N. R. Co. v. Slusher's Adm'r, 217 Ky. 738, 290 S. W. 677.

Appellant argues that the evidence demonstrates as a matter of law that the plaintiff was guilty of contributory negligence; hence, that it was entitled to a directed verdict. The principal predicate for the argument is that he was on a railroad crossing, and that it was just as much his duty to keep a lookout for approaching trains as it was for the trainmen to keep a lookout for travelers on the crossing. It is not the rule in this jurisdiction that a traveler is required to stop, look, and listen as he comes upon a railroad crossing, and his failure to do so is not in itself negligence per se. Our rule is that only ordinary care for one's safety at a railroad crossing is required, and whether or not that degree of care has been exercised depends upon the circumstances of each case. Kelsch's Gdn. v. C. & O. R. Co., 251 Ky. 332, 64 S. W. (2d) 886. If one upon a crossing is unaware of the approach of a train and relies upon the statutory signals and his sense of hearing and such signals are not given, it is for the jury to say whether his failure to learn that the train is approaching before going upon or remaining upon the tracks constitutes contributory negligence. Chesapeake & O. R. Co. v. Kennard's Adm'r. 222 Ky. 115, 300 S. W. 335. If there is a scintilla of evidence of the plaintiff's not having observed ordinary care, the question of contributory negligence is for the jury. Chesapeake & O. R. Co. v. Warnock's Adm'r, 150 Ky. 74, 150 S. W. 29. If there is substantial evidence that the trainmen were not keeping a lookout, or that the train did not give the usual and statutory signals of its approach and one is injured at a crossing, the evidence is regarded as sufficient to take the case to the jury. Illinois Central Railroad Company v. Holmes, 196 Ky. 303, 244 S. W. 768; Bozarth's Adm'r v. Illinois Central Railroad Company, 219 Ky. 786, 294 S. W. 483; Kelch's Gdn. v. C. & O. R. Co., supra.

While the great weight of the evidence in this case —having due regard for the probabilities—indicates

438

that the plaintiff must have known of the approach of the train in ample time to save himself, yet the evidence to the contrary must be deemed sufficient to authorize a submission of the case to the jury. No other point is made upon the appeal.

Wherefore the judgment is affirmed.