## Cincinnati, N. O. & T. P. Ry. Co. et al. v. Fox.

(Decided June 15, 1937.)

NELSON D. RODES for appellants.

E. V. PURYEAR for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellee, Kinder Fox, obtained a judgment for $900 against the appellants for damages to his automobile and personal injuries received by him in a railroad crossing accident in Junction City, Ky. The only ground urged for a reversal of the judgment is the al-

leged error of the trial court in overruling appellants' motion for a directed verdict in their favor. It is their contention that appellee was guilty of contributory negligence as a matter of law, and that the evidence failed to show any negligence on the part of appellants.

Fox was engaged in the dairy business, and made daily deliveries of milk to regular customers in Junction City. At 9:30 a. m., January 22, 1935, Fox delivered milk to a customer who resided on Locust street, a short distance north of the point where a switch track of the Cincinnati, New Orleans & Texas Pacific Railroad crosses Locust street. Sixty feet south of this crossing, Locust street is crossed by the main track of the Louisville & Nashville Railroad. It was a cold day, and snow was falling. Fox testified that after making the last delivery of milk he drove south on Locust street, one of the main traveled streets of Junction City, and, as he approached the crossing, looked both to his left and right, but saw no train approaching. He was chiefly interested in observing the main track of the Louisville & Nashville, since he had rarely seen a moving engine or cars on the switch track which extended only a short distance east of the Locust street crossing. Before his automobile cleared the crossing, it was struck by a freight car going in an easterly direction and was carried down the track a distance of at least 110 feet, according to plaintiff's evidence. A local freight train moving south from Danville, Ky., had stopped on the passing track parallel to the main track of the Cincinnati, New Orleans & Texas Pacific Railroad, and the engine was uncoupled from the train to do switching work at Junction City. One box car was to be spotted on the switch track east of the Locust street crossing, and it was while this car was being pushed along the switch track that the accident happened.

The appellant Will Shannon, one of the brakemen in charge of the freight train, was stationed on top of the box car to keep a lookout as it was backed along the switch. He testified that he was standing on the box car as it moved eastwardly along the switch track watching the crossing, and saw the automobile traveling south on Locust street about 100 feet from the crossing. When the driver of the automobile failed to slacken its speed, he signaled the engineer to stop. The box car struck the automobile, and stopped 75 feet east

of the crossing. He could not say positively that the bell was ringing or that any other warning signal was given for the crossing. The appellant G. L. Thomas, who was the engineer, testified that he left the train on the passing track and moved the engine and one box car onto the switch track. Shannon was on the box car, and another brakeman was riding on the step of the pilot next to the box car. The engine was traveling at a speed of not more than 10 miles an hour as it approached the Locust street crossing. He was unable to see the brakeman on the box car, but he got a stop signal from the brakeman on the pilot and he immediately applied the emergency brakes. The box car was then about a car's length from the crossing. The bell was ringing as the engine approached the crossing. The appellee testified that he heard no signals, and a number of witnesses who were in the vicinity and heard the crash testified to the same effect. Mrs. Tom Carter was near the freight depot which is just west of Locust street and between the switch track and the main track of the Louisville & Nashville. She saw the box car when it was about 125 feet west of the crossing. She saw a man standing on top of the car at its west end with his back to the crossing. It was cold, and a strong wind was blowing from that direction. He was still standing on the box car facing toward the west when he disappeared behind the freight depot. She did not hear any bell or whistle. Mr. Grover Robinson was in front of the post office a short distance away when he heard the crash. He looked around and saw a man on top of the freight car walking toward the east end of the car. He was then at about the middle of the car. There was some evidence that the whistle was not blown for the crossing and that the bell was not ringing, and the jury could reasonably infer from the testimony of Mrs. Carter and Mr. Robinson that a lookout was not being kept. Appellants rely upon Norfolk & Western Railway Company v. Barney, 262 Ky. 228, 90 S. W. (2d) 14, Chesapeake & Ohio Railway Company v. Harrell's Adm'r, 258 Ky. 650, 81 S. W. (2d) 10, and Louisville & Nashville Railroad Company v. Hurst's Adm'r, 220 Ky. 402, 295 S. W. 458, in support of their contention that appellee was guilty of contributory negligence as a matter of law and that a peremptory instruction in their favor should have been given. In each of the cited cases, the facts were undisputed and

pointed unerringly to the contributory negligence of the plaintiff. Where the facts are uncontroverted and lead to only one conclusion, the question of contributory negligence is one of law for the court, but if the facts are disputed or if there is room for a difference of opinion among intelligent men as to the inference to be drawn from them, the question is for the jury.

The stop, look, and listen doctrine does not prevail in Kentucky, and failure of the driver of an automobile to stop, look, and listen at a railroad crossing does not constitute negligence per se. He is only required to exercise the care of an ordinarily prudent person under similar circumstances. Cox's Adm'r v. Cincinnati, N. O. & T. P. Railway Company, 238 Ky. 312, 37 S. W. (2d) 859. While it was appellee's duty to exercise ordinary care to learn of the train's approach and keep out of its way, yet he had the right to assume that the statutory duties imposed upon the appellants to keep a lookout and give warning signals of the train's approach to the crossing would be performed. Louisville & Nashville Railroad Company v. Johnson, 214 Ky. 189, 282 S. W. 1087; Illinois Central Railroad Company v. Henry, 255 Ky. 434, 74 S. W. (2d) 689; Louisville & Nashville Railroad Company v. Ratliff's Adm'r, 260 Ky. 380, 85 S. W. (2d) 1006, 1010; Hopper v. Barren Fork Coal Co., 263 Ky. 446, 92 S. W. (2d) 776; Illinois Central Railroad Company v. Applegate's Adm'x, 268 Ky. 458, 105 S. W. (2d) 153. In the Ratliff Case it was said:

"The law recognizes the thoughtlessness of human beings when, as members of the traveling public, they approach and use a railroad crossing of the character of that here involved, and for their protection the statute exacts of the company, or those in charge of its trains, the imperative duty to give the crossing signals prescribed by it, and accords to the members of the traveling public the right to rely thereon, when using such crossing, exercising at the time that degree of care ordinarily prudent persons usually exercise under like or similar circumstances."

If one is injured at a public crossing and there is substantial evidence that the trainmen failed to keep a lookout or to give the statutory signals, the case is one for the jury. Kelsch's Guardian v. Chesapeake & Ohio

Railway Company, 251 Ky. 332, 64 S. W. (2d) 886; Illinois Central Railway Company v. Henry, supra; Chesapeake & Ohio Railroad Company v. Kennard's Adm'r, 222 Ky. 115, 300 S. W. 335.

The facts in the instant case bring it, within the rule of the cases, heretofore cited, and it follows that the trial court did not err in overruling appellants' motion for a directed verdict.

The judgment is affirmed.