## Chesapeake & O. R. Co. v. Harrell's Adm'r.
### Same v. Wilson's Adm'r.
### Same v. Striegel's Adm'r.

(Decided June 25, 1937.)

(As Modified on Denial of Rehearing Feb. 11, 1938.)

**764**

EDWARD P. HUMPHREY and MARVIN H. TAYLOR for appellant.

BOOTH & CONNER and CHARLES W. MORRIS for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

These three appeals are from judgments for $9,000 entered upon verdicts in each case in favor of appellee, administrator. The cases were heard together below and so heard here. This is the second appeal. On the former review we reversed the judgments, holding that decedents were guilty of contributory negligence, and that the appellant was not guilty of actionable negligence. Chesapeake & O. R. Co. v. Harrell's Adm'r, 258 Ky. 650, 81 S. W. (2d) 10, 14.

Upon return of the cases amendments to the original petitions were filed, one pleading that the proximate cause of the injuries was the failure of appellant to have a headlight on its engine lighted at the time of the accident, in a manner required by an Interstate Commerce Commission rule. The other pleaded negligence of appellant's employees in failing to use ordinary care to discover the alleged perilous position of decedents, and in failing to use such means as were at its command to avoid the injury.

Upon introduction of proof the court refused appellant's request for a directed verdict; such refusal is

the sole ground now urged for reversal. The court apparently followed our opinion on the first appeal, to the extent of concluding that decedents were guilty of contributory negligence. However, he instructed the jury that, if they should believe from the evidence that the failure to have the headlight burning was the proximate cause of the alleged injuries, they should find for plaintiffs, regardless, in so far as instructions were given, as to whether or not decedents were negligent. Another instruction submitted the question of liability, if it was believed appellant failed to exercise reasonable care to discover peril, or to use ordinary care to avoid injury after the peril was discovered.

The contention of appellant is that the opinion on the first appeal is the law of the case. On the other hand, appellee insists that this is not true since he claims the proof on the second trial showed that decedents were not guilty of contributory negligence, and appellant was shown to have been negligent.

The rule consistently adhered to by this court, is that, where the facts are substantially the same on the second trial, the former opinion stands as the law of the case. Kentucky Road Oiling Company v. Sharp, 257 Ky. 378, 78 S. W. (2d) 38; Louisville & N. R. Co. v. Cornett's Adm'r, 237 Ky. 131, 35 S. W. (2d) 10; Robinson v. Chesapeake & Ohio Railway Company, 227 Ky. 458, 13 S. W. (2d) 500; Carrithers v. Jean's Ex'r, 259 Ky. 20, 81 S. W. (2d) 857; Preece v. Woolford, 200 Ky. 604, 255 S. W. 285. The rule was stated somewhat differently, but to the same effect, in Vincennes Bridge Company v. Poulos, 234 Ky. 243, 27 S. W. (2d) 952, 953:

"The 'law of the case' doctrine prevails, unless the facts [on second trial] are materially different."

Appellee contends that neither the court below nor this court on the appeal, considered the ordinance of the city of Anchorage prohibiting the blowing of the engine whistle, or a ringing of the bell, as bearing on the alleged contributory negligence of decedents. It was conceded on each trial that there was neither a ringing of the bell nor sounding of the whistle. The argument is based on the assumption that, in addition to such warnings as were given, by means of the signal light

and ringing of the bell on the south side, and a similar light on the north side of the track, by means of devices shown to have been in operation, the failure to ring the engine bell, blow the whistle, or have a headlight burning on the engine, relieved the decedents of the duty of exercising ordinary care. In addition to the warning by the lights and the signal operating on each side of the two tracks, there were other warnings. Mrs. Thompson blew her automobile horn; Friedman called to decedents from the north side of the track. While it appears that the driver of the car may have heard the warning given by Mrs. Thompson, we have no means of knowing whether he heard the one given by Friedman. However this may be, the driver did not heed any of the warnings. The effect of failure to give signals, other than such as were given, was fully considered in the former opinion. The situation is not materially different on this trial.

In the case of Stephenson's Adm'r v. Sharp's Ex'rs, 222 Ky. 496, 1 S. W. (2d) 957, we upheld the action of the court in giving a peremptory instruction, and in refusing to give an instruction submitting to the jury as to whether or not the railroad company should have provided other means at the crossing for warning the traveling public than a wigwag signal. It is true in the case just cited that a whistle was blown. When a railroad company adopts effective means or devices at a crossing for the purpose of giving warnings of the approach of a train, then in operation and reasonably sufficient to impart warning, it should not be left to the jury to determine whether other or additional means should be employed. Louisville & Nashville Railroad Company v. Adams' Adm'r, 205 Ky. 203, 265 S. W. 623; Louisville & N. R. Co. v. Jameson's Adm'x, 214 Ky. 552, 283 S. W. 1026. These suggestions direct themselves to the question of negligence on the part of the appellant, but they also serve to show the indefensibility of the position taken by appellee in regard to the lack of showing of contributory negligence of decedents.

It is said in argument that decedents had no knowledge of a double track maintained at the point on the crossing where the accident occurred. Appellee, perhaps, correctly insists that at the H. K. tower there

was no double track, nor any such between the Bellwood crossing and La Grange, whence these travelers had come. How the decedents could have had in mind that that which is called a switch track paralleling the main was not a double track, cannot be conceived. We have examined the blueprints about which there is no argument as to correctness, and we can see nothing to demonstrate any difference in the tracks at the place of the accident and those at the H. K. tower, over which they crossed before coming on to the second crossing. It is also argued that there was a 7 per cent. grade from the railroad tracks to a point where the roadway made its right angle turn to cross the tracks, and that travelers could not see the two tracks. There is proof that the two tracks cannot be readily seen from certain points as the traveler on the highway approaches them. There is proof that the second track can be seen from these points by one seated in an automobile. It is clear from the proof that the two tracks, east and westbound, are on a level with each other and approximately 13 feet apart. It is inconceivable how a traveler, upon reaching the south rail of the eastbound track, could fail to see that there was another track just ahead, if he looked at all.

The feature of the case was discussed in the first opinion, and we said:

"As they crossed this south track, the north track was in full view and only 13 feet away, and north of it were two waiting automobiles, which were notices to them of something wrong."

We find no new material or substantial evidence in respect to this feature of the case.

It is argued that the failure to have a burning headlight was not only actionable negligence on the part of the appellant's servants, but was a factor to be considered in determining whether the travelers were or were not guilty of contributory negligence. There was proof that the headlight was not burning; that the accident occurred eight minutes after sundown; that it had begun to get dark; that lights were burning on the decedents' car, and on another automobile on the north side of the track. The glare of the lights from the travelers' car could be seen at a distance up the

track; and that a flashlight was used soon after the accident to search for articles lost in the grass by the unfortunate travelers.

However, with that proof standing as it does, we cannot conceive that the failure to have the headlight burning had ought to do with the movement of the travelers in the automobile. The proof was to our minds overwhelmingly to the effect that, although the sun had set eight minutes before the accident, it was light enough for travelers to see clearly the wigwag signals, and the automobiles waiting on the north side of the track. Those witnesses who testified to seeing the passenger train at a distance of 300 or less feet were in the same relative position as decedents, for a part of the time. The fact that other lights were burning on automobiles or at the school does not serve to lead to the belief that the failure to have the headlight burning misled or misguided the travelers. However, what was said on the former appeal, with relation to blowing a whistle or ringing a bell, applies with equal force to this alleged (and proven) omission. The jury could only have guessed what the travelers might or might not have done had headlight been burning. Appellees could not rely upon the failure of the headlight any more than upon failure to ring the bell or blow the whistle, since it would constitute antecedent negligence on the part of appellant, and one guilty of contributory negligence cannot base his right of recovery upon alleged antecedent acts of negligence on the part of one causing injury. Braden's Adm'x v. Liston, 258 Ky. 44, 79 S. W. (2d) 241; Chesapeake & O. Railway Company v. Conley's Adm'x, 261 Ky. 669, 88 S. W. (2d) 683.

We take up now the claimed difference in facts. It is said that the court found that the depot was about 335 feet east of the crossing as shown on an unquestioned blueprint. On the present trial it was stated that measurement showed the distance to be 457 feet. This, as we gather, would make the crossing about 400 feet from the west end of the building. This would not work material difference with relation to the alleged negligence of the servants of appellant, particularly when it is bound to be the fact that the passing freight train obscured the view of the engineman until the freight train had proceeded some distance eastwardly.

In the former opinion it was said the travelers were proceeding to the crossing at the rate of about 5 miles an hour. It is now argued that the proof on this trial showed "not more than 3 or 4 miles per hour," and again "3 miles per hour and even slower." Accepting the lesser speed, as is pointed out, it would only serve to make more definite the conclusion that the travelers were guilty of contributory negligence, since at the speed of 5 miles per hour, brakes in good order, proof showed that the automobile could have been stopped in 1 foot. It is also argued that we said the passenger train was traveling at the rate of about 20 miles, or more, per hour, and that on the last trial the speed was estimated by several witnesses to have been from 25 to 40 miles per hour. If we accept the highest rate of speed estimated, this difference in proof would cut no figure, since the speed of the train was not to be considered under the court's instruction as to the duty resting upon the servants of appellant. Womack v. Ison, 264 Ky. 640, 95 S. W. (2d) 277; Braden's Adm'x v. Liston, 258 Ky. 44, 79 S. W. (2d) 241.

It is said that those in charge of the passenger engine, as shown by the proof on the last trial, had opportunity to see the automobile at distances ranging from 280 to 457 feet, whereas it was said in the former opinion that the enginemen had no chance to see the automobile until immediately before the accident. We have examined the testimony of the witnesses, whose statements are relied upon to show the alleged difference in facts, one saying that, when the automobile started towards the track, the passenger train was "around just about the station, I should think." Another said, in reference to the same situation, "about 290 feet, somewhere about that, from the center of the crossing." Another said when the automobile had gotten over the second rail of the south track, that the passenger train was about 280 feet from the crossing. These same witnesses also testified, or at least one of them, that at the distance of 280 feet there was no obstruction between the front end of the automobile and the locomotive. What the witness meant by "no obstructions" we cannot say, but from the testimony it is clear that, at some point between the 280 or more feet from the locomotive to the crossing, there was the

obstructing freight train. None of these witnesses undertake to contradict the engineer and fireman who say the engineer on the right side of the engine did not see, or could not see, the automobile because of his position, and the fireman saying that he could not and did not see the automobile until the pilot of the engine was approximately 30 feet from the automobile, because of the presence and slow movement of the freight train. We note from the petition for rehearing filed after the former opinion, it was argued that the proof on the first trial showed that the fireman could have seen the automobile from 190 to 380 feet from the crossing. So it may be concluded that this court fully considered that phase of the testimony.

In this situation the fireman, as appeared on each trial, gave the signal, as he states, when he saw that the travelers, after a momentary stopping, were proceeding to cross the north track. It is argued now, as it was on the former appeal, that the fireman was negligent in not giving the signal sooner than he did. One witness stated that he noted no difference in the speed of the train from the time he first saw it until it got to the crossing. Another that the train was "going at its regular rate of speed," and that no effort was made to slow down. Another said, "I suppose it was still going 15 to 18 miles per hour when it struck." It is noted that the witnesses who thus testified were those around or in the automobiles on the north side of the track, some of whom were having trouble with an automobile.

The situation called for action on the fireman's part in giving the signal and the engineman's response, according to the proof, took a few seconds' time. It can be readily understood that one, even though closely noticing and having the ability to judge the speed of trains, could see no appreciable difference in the speed in the short distance covered, or the period of time consumed in traveling the short distance, either at the lowest or highest rate fixed by witnesses.

On the first trial, as was said by the court in its opinion, the fireman saw the automobile crossing the south track 12 or 14 feet from the north track "upon which the train was running." In the fireman's deposition, read into the evidence on the first trial, he

stated that the automobile was 3 feet from the track, when he first saw it and signaled the engineer. There may be a discrepancy as between the deposition and the proof taken on this last and the first trial, but when we turn to the record on the first trial we find that Graves, the fireman, testified substantially as he did on the last trial. He said the automobile was on or near the south track when he first saw it. On the former trial this witness said: "The auto was on this track over here," and marked the point and then said, "that was 14 feet from the north track." We see no difference in the proof as we view it. The fact that the witness admitted that he might have made a different statement in his deposition would only be considered as affecting his credibility.

On the former appeal it was determined that the negligence of decedents was the proximate cause of the accident and resulting injury, and the question of approximate cause is the controlling question in the present case, and so far we have found no evidence that would justify the court in concluding that their negligence was not the proximate cause.

When we consider the last clear chance rule, as applied here under the law and facts, the situation narrows down to the time when the fireman discovered, or could have discovered, using ordinary care, the peril of the travelers, and as to his duty in acting in an emergency. On the last case we considered and discussed the latter question and determined that the employees of appellant did everything possible, under the proof, to avoid the infliction of the injury. This, as appears in the first opinion, was based on the conclusion of the court, viewing the evidence, that "there was in this case less than two seconds in which to do anything." In the former opinion we said:

"It was as much the duty of the decedents to have seen the train as it was the duty of those in charge of the train to see them. Their own negligence placed them in a position of danger from which the servants of the defendants were unable by ordinary care to rescue them."

It is apparently contended that the last clear chance rule became applicable at the moment when the

fireman might have seen or did see the automobile; in other words, when, as claimed, the passenger engine was 280 feet east of the crossing, and the freight train had proceeded eastwardly a distance of approximately 80 feet. In the proven situation, as we view it, the doctrine or rule mentioned did not then become applicable.

In Cincinnati, N. O. & T. P. Railway Company v. Wallace's Adm'r, 267 Ky. 661, 103 S. W. (2d) 91, 94, wherein it appeared that Mrs. Wallace was killed while crossing appellant's track, this court, in determining when the rule became applicable, said:

> "She was not 'in peril' until she got upon the track, or until it became clearly apparent to those in charge of the train that she was heedless of its approach, and, perhaps, unaware thereof, and that she was then so engaged or so acting as to clearly indicate a determination to cross the track in front of the train and not to stop and await its passing. When such situations are presented, then the doctrine of 'last clear chance' arises, and it becomes the duty of those operating the train, in such circumstances and conditions, to perform all acts within their power—with the means at hand—to prevent or avert the injury. But, until such peril arises, the operators of the train have the right to believe that the one who is only potentially approaching danger will desist from his course and avert it before actual peril is created, and which desisting, ordinary prudence on his part requires and demands. [Citing cases.] * * * There are still some duties imposed on the injured person, the observance of which may not be dispensed with by even the 'last clear chance' doctrine."

See, also, Chesapeake & O. Railway Company v. Epling's Adm'r, 262 Ky. 609, 90 S. W. (2d) 719.

From all the facts, bearing on the question of the applicability of the discussed rule, it at once becomes apparent that the operators of the train could not have had anything like seven seconds in which to act; such action as was taken depending upon the signal from the fireman and application of the emergency brake by the engineer. This is true, when the proof tends to

show the speed of the train to have been from 25 to 40 miles an hour, the automobile proceeding at the rate of 5 miles an hour. Under the proof, as we see it (in respect to the application of the rule), it may be concluded that the finding in the former opinion, as to the time the trainmen had in which to discover peril or to act after discovering peril, was approximately correct, and the proof introduced on the last trial does not differ to such an extent as to justify the court in concluding otherwise than as expressed on the former appeal.

On the whole case we are fully persuaded that the proof produced on the second trial differs in no such substantial or material degree as to authorize us to hold that the first opinion is not the law of the case, and, thus concluding, we are of the opinion that the lower court should have sustained appellant's motion for a peremptory instruction.

Judgment reversed for proceedings consistent herewith. The whole court sitting.

Perry, J., dissenting.