## Amburgy's Adm'x v. Chesapeake & O. Ry. Co.

(Decided March 15, 1938.)

HOGGE & HOGGE for appellant.

JAMES C. CLAY for appellee

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Very early on the morning of July 29, 1936, Cana Amburgy was found dead on the tracks of the Chesapeake & Ohio Railway Company, at or near what is known as Spoke Factory crossing between Clearfield and Morehead. Jennie Amburgy, his wife, as his administratrix, brought this action against the railroad company to recover for his death, alleging in substance in her petition as amended that he was killed on a public crossing by freight train No. 92 going east and that his death was due to the negligence and carelessness of the company's agents, employees, and servants in the operation of the train.

The company traversed the allegations of the petition and affirmatively alleged contributory negligence upon the part of plaintiff's decedent. At the close of the evidence for plaintiff the court peremptorily instructed the jury to find for the defendant and plaintiff is appealing.

The body was found lying between the rails and between that portion of the crossing improved for travel and a cattle guard a considerable distance therefrom. The right leg had been severed between the knee and ankle and the severed portion of the leg and foot was found some distance away. There were a few scratches and marks on the face and portions of the body, but so far as the evidence discloses there was nothing to indicate that decedent had been struck while in an upright position. So far as the evidence discloses the last person to see Cana Amburgy alive was Lloyd Brown who testified that he saw him about 9 o'clock on the night he was killed; that at the time Amburgy was drinking heavily. This witness passed over the Spoke Factory crossing 5 or 10 minutes before passenger train No. 24 going east ran. This train passes the crossing about 10 o'clock. He testified that he saw nothing of Amburgy at the crossing when he passed but there is no evidence whatever as to conditions with respect to light or visibility at that time. There is also evidence that freight train No. 92 passes this point after 2 o'clock a. m. One witness stated that he caught this train at Winchester and rode to Morehead in a freight car 8 or 10 cars back of the engine; that if the engine whistled for the crossing he failed to hear it. One witness testified that he was on his front porch a short distance from the crossing a little after 2 o'clock when a freight train passed going east; that it whistled for the Brady crossing a half mile or so west of the Spoke Factory crossing but did not whistle for the latter crossing.

Assuming without the necessity for deciding whether the Spoke Factory crossing is a public crossing where statutory and customary signals should be given as a warning of the approach of trains to persons using the crossing, we may consider the sufficiency of the evidence otherwise to take the case to the jury. There is no evidence as to when or under what circumstances Amburgy met his death. The conditions or surroundings as described by witnesses would naturally give rise

to the inference that he was run over by a train. There is evidence that several regular trains passed this point during the night and witnesses who were informed as to the number of trains stated that at least four regular trains passed each night. If Amburgy was in fact killed by a train, there is little if anything to indicate what particular train it was or from which it might reasonably be inferred that it was No. 92 rather than some other train running that night; and there is absolutely no evidence that other trains did not give the usual and customary signals for the crossing, if, in fact, signals were required.

As a general rule, evidence that a person is killed at a crossing where signals are required to be given and that the train causing the death did not give the statutory or customary signals is sufficient to take the case to the jury. See Kelsch's Guardian v. C. & O. Railway Company, 251 Ky. 332, 64 S. W. (2d) 886, and cases therein cited. But in this instance, it is not shown that, if Amburgy was killed by a train, the statutory or customary signals of the train's approach were not given. In Sutton's Adm'r v. Louisville & Nashville Railroad Company, 168 Ky. 81, 181 S. W. 938, 940, it is said:

> "It is the well-established rule in this and other jurisdictions that, in the case of an action for damages for death, it is not sufficient merely to show that the decedent was killed by the defendant and that the defendant was guilty of negligence. It must further appear that his death was caused by the proven negligence. [Citing cases.] Following this rule, it is held that conjecture affords no sound basis for a verdict. It is not sufficient, therefore, to present a number of circumstances about which one might theorize as to the cause of the accident."

As said in the Sutton Case the evidence in this case affords no reasonable basis for the presumptions that necessarily must be indulged in in order to fix liability upon appellee; but there must be some reasonable basis for inference or presumption of liability. Presumption based on presumption or inference on inference is not sufficient. It is our conclusion that in the proven circumstances the court properly directed a verdict for appellee.

Judgment affirmed.

Whole court sitting.